HARRIS COUNTY EMERGENCY SERVICE DISTRICT # 1, Linda Maxwell, Paula Phillips, Pat Siddons, and Jesse Varela, Appellants,

v.

HARRIS COUNTY EMERGENCY CORPS, Appellee.

No. 14–97–01221–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 12, 1999.

---

4. *See Heitman v. State*, 815 S.W.2d 681, 690 (Tex.Crim.App.1991).

Gerald K. Payte, Gloria J. Kologinczak, Houston, for appellants.

Jennifer S. Riggs, Austin, for appellees.

Panel consists of Justices YATES, MAURICE E. AMIDEI, and FOWLER.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellants, Harris County Emergency Service District # 1, Linda Maxwell, Paula

Phillips, Pat Siddons, and Jesse Varela, (collectively the "District") appeal a permanent injunction against them issued for violations of the Texas Open Meetings Act. Appellants appeal on three points of error. We affirm the trial court judgment as modified.

## THE CONTROVERSY

Harris County Emergency Service District # 1 was formed under the Texas Health and Safety Code to provide emergency medical services to portions of northern Harris County. The District contracted with Harris County Emergency Corps ("Corps") to provide emergency medical services within the District. In early 1996, apparently unhappy with the services provided by the Corps, the District investigated contracting with another emergency provider to replace the Corps when the Corps' contract expired.

In October of 1996, the District awarded a "contingency contract" to a private company to assume the Corps' emergency medical services, if the Corps should fail to perform under its existing contract. The District made the award without conducting a competitive bidding process.

In the same general time frame, District President Jesse Varela directed District employees to draft a Request for Proposals (RFP) to solicit proposals from firms seeking to become the new emergency medical services provider. This RFP was circulated among the board members to receive their written comments. Changes were made based on those comments, and the RFP was issued without any action or approval of the committee. Before the date the proposals were due, the committee met with interested parties and answered questions about the RFP. However, the Corps was denied such a meeting. Once the proposals were submitted, District President Varela set up a committee to evaluate them. The committee existed of two District Board members, Varela and Maxwell, as well as two employees of the District, Cheryl Branson and Randy Ber-

tin. In February of 1997, the District Board met, received the recommendation of the evaluation committee, and selected what they determined to be the best proposal. The Corps' proposal was not selected.

The Corps sued the District for emergency relief to prevent future violations and to remedy past violations of the Texas Open Meetings Act (TOMA), the Texas Open Record Act (TORA), and other statutory violations. After a hearing, the trial court provided some relief for the Corps. In its final judgment, the trial court made the following findings of fact and conclusions of law:

## SPECIFIC FINDINGS OF FACT

1. Defendants stipulated that they did not comply with any competitive bidding statutes, in particular Chapter 262 of the Texas Local Government Code, when they awarded the contingency contract.

2. Defendants stipulated that they did not comply with any competitive bidding statutes, in particular Chapter 262 of the Texas Local Government Code, when they selected the prevailing proposer with which they entered into negotiations to become the new emergency services provider for the District.

3. Defendants failed to give proper and sufficient notice of the subjects to be discussed at District meetings, frequently listing subjects for discussion as "Old Business" and "New Business." The District, however, gave sufficient notice of its February 20, 1997 meeting that the District would select the prevailing proposal for the new emergency services contract.

4. Defendants did not act as a body in approving the Request for Proposals published to solicit proposals for the new emergency service provider contract.

5. Defendants did not meet as a body to appoint the committee to which it delegated authority to evaluate the proposals submitted by companies seeking to become the new emergency service provider for the District.

6. [deleted in original]

7. Defendant District held meetings on April 12, 1996, April 23, 1996, and November 26, 1996, without giving 72 hours notice of these meetings.

8. Defendant District held meetings on April 12, 1996, April 23, 1996, and November 26, 1996, without giving notice of the reason for giving less than 72 hours notice and without the existence of any emergency.

9. President Varela delegated to an evaluation committee the task of evaluating the proposals.

10. The evaluation committee included two District Board members.

11. The evaluation committee did not post notice of its meeting and did not conduct the meeting in public.

12. Defendant Board members discussed District policy and business in telephone conversations that did not meet the requirements of the Texas Open Meetings Act.

13. Defendant Board members discussed District policy and business in numbers less than a quorum.

14. Defendant District failed and refused to release to the Corps public records, in specific, the proposals and the material used to evaluate the proposals.

### CONCLUSIONS OF LAW

The Court reached the following conclusions of law:

1. Harris County Emergency Service District # 1 is not a subdivision of Harris County, and is therefore not required to comply with the competitive bidding requirements of Chapter 262 of the Texas Local Government Code.

2. The evaluation committee appointed to evaluate proposals submitted by service providers in response to the District's RFP was not required to comply with the Texas Open Meetings Act when it met to evaluate and discuss the proposals.

3. The District did not violate the Texas Open Meetings Act at its February 20, 1997 meeting with regard to the selection of the prevailing proposer.

4. With the sole exception of the February 20, 1997 meeting at which the prevailing proposal was selected, the District did not post notice adequate to comply with the Texas Open Meetings Act about any District discussion of the new provider contract, about any action on the contingency contract, about any precursor action to issue the RFP for the new provider contract, or to amend the RFP.

5. The District's selection of AMR's proposal was supported by substantial evidence.

6. Once the deadline has passed to submit proposals in response to an RFP, the proposals have been reviewed, and a prevailing proposal selected, and [sic] the proposals and material used to evaluate the proposals are public records.

The trial court then entered a permanent injunction against the District for violating the Texas Open Meetings Act. The injunction ordered the following:

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT**

Defendants shall be and are hereby permanently enjoined from violating the Texas Open Meetings Act in the following manners:

1. Defendants shall not discuss District policy or business over the telephone with other Board members;

2. Defendants shall not discuss District policy or business with other District Board members except in public meetings, properly noticed, with specific notice of the subjects to be discussed, called, and conducted;

3. Defendants shall not hold emergency meetings in the absence of a bona fide emergency, and unless the meetings are properly noticed, with specific notice of the subjects to be discussed and the reason for the emergency, called, and conducted;

4. Defendants shall not conduct closed or executive sessions unless the business to be discussed in the closed session clearly meets one of the exceptions to open sessions listed in the Texas Open Meetings Act, and unless the closed sessions are properly noticed with specific notice of the subjects to be discussed in closed session and a tape recording or certified agenda of the closed session is kept; and

5. Defendants shall not discuss District business or policy under the public notice headings of "New Business," or "Old Business.".

The trial court also ordered the District to release all the proposals it had received and to pay the Corps' attorney's fees.

■ The District appealed the judgment on three points of error, challenging the evidence to support the permanent injunction. The proper standard of review when a trial court grants or denies a permanent injunction is whether the trial court clearly abused its discretion. *See Morris v. Collins*, 881 S.W.2d 138, 139 (Tex.App.— Houston [1st Dist.] 1994, writ denied); *Priest v. Texas Animal Health Comm'n*, 780 S.W.2d 874, 875 (Tex.App.—Dallas 1989, no writ).

## THE CONTROLLING LAW

■ This case is governed by the TOMA which was enacted in 1967 to assure "'that the public has the opportunity to be informed concerning the transactions of public business.'" *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 300 (Tex. 1990). Under the TOMA, all meetings of governmental bodies must be open to the public unless a closed session is expressly authorized by law. *See* TEX. GOV'T CODE ANN. § 551.002 (Vernon 1994). A meeting includes any deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, during which public business or policy over which the governmental body has supervision is discussed. *See* TEX. GOV'T CODE ANN. § 551.001(4) (Vernon 1994). The TOMA defines deliberation as any verbal exchange during a meeting between the quorum of a governmental body, or between the quorum of a governmental body and another person, about an issue within the jurisdiction of the governmental body. *See* TEX. GOV'T CODE ANN. § 551.001(2) (Vernon 1994). "When a majority of a public decisionmaking body is considering a pending issue, there can be no 'informal' discussion. There is either formal consideration of a matter in compliance with the Open Meetings Act or an illegal meeting." *Acker*, 790 S.W.2d at 300.

## DISCUSSION AND HOLDINGS

In point of error one, appellants contend the trial court erred by enjoining the members of the Board of Commissioners from discussing District policy or business in any manner, except during a public meeting of the Board. They claim that the conduct enjoined is not a violation of the Open Meeting requirements and that the injunction is not supported by sufficient legal or factual evidence. Specifically, appellants want us to set aside provisions one and two of the injunction. These two provisions read as follows:

1. Defendants shall not discuss District policy or business over the telephone with other Board members;

2. Defendants shall not discuss District policy or business with other Dis-

trict Board members except in public meetings, properly noticed, with specific notice of the subjects to be discussed, called, and conducted;

We turn first to provision one. We agree with appellants that this provision should be set aside, because the record contains no evidence that they were violating the Open Records Act through telephone conversations. In order for the trial judge to have found a violation of the act, he must have found that the telephone conversations were "meetings", as that term is defined in the act, and that "deliberations" occurred at the meetings. The act defines a "meeting" as "a deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, during which public business or public policy over which the governmental body has supervision or control is discussed or considered or during which the governmental body takes formal action." TEX. GOV'T CODE ANN. § 551.001(4) (Vernon 1994). A deliberation "means a verbal exchange during a meeting between a quorum of a governmental body, or between a quorum of a governmental body and another person, concerning an issue within the jurisdiction of the governmental body or any public business." TEX. GOV'T CODE ANN. § 551.001(2) (Vernon 1994). The District Board is comprised of five commissioners. Therefore, a quorum is three commissioners. See TEX. GOV'T CODE ANN. § 551.001(6) (Vernon 1994). Our decision is controlled by these provisions and the case law interpreting them.

■ Evidence concerning telephone conversations among Board members came from two witnesses. First, Maxwell testified:

Q: Okay. Do you talk to board members on the telephone about District business?

A: Most recently, more about the lawsuit than anything, yes.

Q: Okay. But you do have—throughout your service on the board engaged in telephone conversations with other board members about board business?

A: Generally—It was never about anything where any decisions were made. It was where we needed to talk about it at the next meeting, will we need to get this on this agenda, or whenever we have heard—and we'd even receive phone calls when the Corps didn't have ambulances on the street. So, yes, we did.

Maxwell further testified later in the trial proceedings as follows:

Q: With regard to your telephone conversations with other commissioners, how often do you talk to other commissioners on the telephone about board business?

A: Which commissioners and which year?

Q: Well, how about Commissioner Varela this past year?

A: In the past year?

Q: Yes.

A: I might have talked to Jesse 10 times within the last couple of months, basically about the lawsuit, and prior to that maybe, maybe once a month, every two months in the time before that.

Q: You don't recall talking to him, once a week or once month?

A: I don't know. I don't keep a record of what I did. I'm just trying to answer the question.

Q: Okay. Do you recall in your deposition saying that sometimes you talk once a week or once a month?

A: Possibly.

Second, Varela testified about the phone calls as follows:

Q: Do you recall having telephone conversations with other board members about public business and policy, district matters?

A: I don't recall the specifics of each one of those phone calls, but I do remember that we had phone calls.

From this evidence, the trial court enjoined the board members from discussing district business over the phone.

For two reasons, this evidence does not amount to a violation of the Texas Open Meetings Act. First, it does not prove that a quorum was involved in the conversations nor does it prove that the conversations were a meeting. On this issue, the parties have cited us to *Hitt v. Mabry,* 687 S.W.2d 791, 796 (Tex.App.—San Antonio 1985, no writ). We agree that *Hitt* is instructive. In *Hitt,* a trial court enjoined members of a school board from conducting any meetings or engaging in deliberation to discuss public business or public policy or arriving at a decision on public business or public policy by way of telephone conferences. *See id.* at 795. The San Antonio court warned that an injunction must not be so broad as to enjoin a defendant from engaging in activities which are a lawful and proper exercise of his rights. *See id.* at 796. It then noted that no legal authority exists to enjoin administrators from discussing public business on the phone. *See id.*

However, this record does not present a *Hitt* situation. This record shows that the board members discussed only what they needed to put on the agenda for future meetings. Unlike *Hitt,* there is no evidence that the district members were attempting to circumvent the TOMA by conducting telephone polls with each other.

The second reason the evidence does not show a violation of the TOMA is because there is no evidence that the board members were using the telephone to avoid meeting in a quorum and thereby circumvent the act. As we noted earlier, this record does not show that a quorum of the Board ever discussed policy or public business over the phone or that more than two members ever discussed the same topic. Moreover, it contains no evidence of polling.

In short, there is no evidence that the telephone conversations were a meeting or were being used to circumvent the purposes of the act. Thus, no evidence supports provision one of the injunction. In addition, the provision is too broad because it is an absolute prohibition against Board Members discussing business over the phone, even if a quorum is not involved in the conversation. Consequently, we modify the trial court's order by deleting the first provision.

■ We now turn to appellants' second argument that the second provision of the injunction is not supported by the evidence. This provision reads as follows:

2. Defendants shall not discuss District policy or business with other District Board members except in public meetings, properly noticed, with specific notice of the subjects to be discussed, called, and conducted;

According to the record, the board would gather at the District office about an hour before the public meeting, in what the record called a "premeeting," to allow the members to review their individualized binders which contained information about what was on the agenda for that day's meeting. The members reviewed their binders in separate rooms within the District office. The evidence reflects that the district members specifically met in the separate rooms to avoid violating the TOMA. At times, one board member would question another board member about something in the binder in preparation for that day's meeting.

Apparently, the trial court found that members violated the TOMA when two members were together and asked questions of one another. We disagree.

As we noted earlier, the Texas Open Meetings Act requires governmental bodies to hold their meetings open to the public. "Every regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter." TEX. GOV'T CODE ANN. § 551.002 (Vernon 1994). A meeting is defined as "a deliberation between a quorum of a governmental body, or between a

quorum of a governmental body and another person, during which public business or public policy over which the governmental body has supervision or control is discussed or considered or during which the governmental body takes formal action." TEX. GOV'T CODE ANN. § 551.001(4) (Vernon 1994). A quorum is defined by the Act as majority of a governmental body. *See* TEX. GOV'T CODE ANN. § 551.001(6) (Vernon 1994). Based on a simple reading of the code, appellants' actions do not violate the TOMA. The District had five commissioners. If only two members were in the same room asking questions about that day's agenda, they did not constitute a "quorum" because they were not a majority of the board members. When less than a quorum is involved, the Act does not limit the discussions of the commissioners. *See* TEX. GOV'T CODE ANN. §§ 551.001–.002 (Vernon 1994). And, we reiterate, that this record contains no evidence of polling or of any attempt to circumvent the Act by meeting in groups that were less than a quorum.

Although appellee argues that appellants made a concerted effort to avoid meetings in numbers less than a majority to avoid having a quorum and thus avoid application of the TOMA, we find no evidence to support this position. The evidence appellee brought forward is evidence of a volunteer organization doing its best in most instances to comply with the TOMA. There is no evidence that any decisions or deliberations were secretly conducted in violation of the TOMA. There is no evidence of any informal polling taking place in these "premeetings". Appellee alleges that appellants' conduct is only one step away from violating the TOMA by having one member circulate among the rooms and asking all the other members how they are going to vote or decide certain issues. Yet, appellees brought forward no evidence of such actions occurring. Appellee urges us to conclude that appellants violated TOMA, simply because all the members of the board were under one roof and two of the members may

have consulted with each other. We decline to adopt such an interpretation of the TOMA.

In conclusion, when two members meet together, they do not constitute a quorum. Without the presence of a quorum, they have not had a meeting as defined by the Act, and they have not violated the TOMA. Because there was no meeting, there also was no violation of the TOMA. As a result, the trial court abused its discretion when it enjoined appellants in provision two of the injunction, and, we order that provision struck from the injunction.

In accordance with this discussion, we sustain appellants' first point of error and order that the following first and second provisions from the injunction be struck.

1.  Defendants shall not discuss District policy or business over the telephone with other Board members;

2.  Defendants shall not discuss District policy or business with other District Board members except in public meetings, properly noticed, with specific notice of the subjects to be discussed, called, and conducted;

In its second point of error, appellants contend the trial court erred by enjoining them in the injunction's fourth provision from conducting closed or executive sessions. They claim the evidence at trial was both legally and factually insufficient to establish that they had ever conducted closed or executive sessions in violation of the TOMA and that there was no evidence that they might do so in the future. This injunction provision reads as follows:

4.  Defendants shall not conduct closed or executive sessions unless the business to be discussed in the closed session clearly meets one of the exceptions to open sessions listed in the Texas Open Meetings Act, and unless the closed sessions are properly noticed with specific notice of the subjects to be discussed in closed session and a tape recording

or certified agenda of the closed session is kept; and

Appellants argue that their pre-meetings in which they reviewed their individualized binders were not a violation of the TOMA. For the reasons discussed under point of error one, we agree. Without evidence showing that appellants conducted closed or executive sessions in which public business was discussed or deliberated, the trial court could not enjoin appellants. We, therefore, grant appellants' second point of error and delete the fourth provision, set out immediately above, from the injunction.

In their third point of error, appellants contend the trial court erred when it enjoined them from holding emergency meetings (a) in the absence of a bona fide emergency, and (b) unless the meetings are properly noticed. Once again they claim the evidence was legally and factually insufficient to establish that they were likely to hold emergency meetings in the future in the absence of a bon fide emergency or without proper notice.

Appellants admitted in their answer that they held three emergency meetings, two in April of 1996 and one in November of 1996, which violated the TOMA because a meeting notice was not properly posted. However, they contend there is no evidence that such an action would occur in the future and, thus they should not be enjoined from such an action. We disagree.

The Texas Open Meetings Act states "[a]n interested person, including a member of the news media, may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body." TEX. GOV'T CODE ANN. § 551.142 (Vernon 1994). Because appellants have shown a pattern of not properly posting notice for their emergency meetings, the trial court did not abuse its discretion when it enjoined them from holding emergency meetings without the proper notice.

Therefore, we overrule appellants' third point of error and affirm the trial court's judgment as modified.