R. Robert WILLMANN, Jr., Brigid Sheridan, and Ed Minarich, Appellants,

v.

CITY OF SAN ANTONIO, Appellee.

No. 04–02–00853–CV.

Court of Appeals of Texas, San Antonio.

Oct. 8, 2003.

Rehearing Overruled Nov. 3, 2003.

Harry A. Nass, Jr., James M. Parker, San Antonio, for appellants.

John E. Clark, Goode Casseb Jones Riklin Choate & Watson, P.C., Michael R. Hedges, Hedges & Associates, P.C., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, KAREN ANGELINI, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

Robert Willmann, Jr., Brigid Sheridan, and Ed Minarich (collectively "appellants"), challenge the method used by the City of San Antonio ("the City") in appointing municipal court judges. Appellants contend on appeal that the trial court erred in granting the City's no-evidence motion for partial summary judgment. Appellants also challenge the trial court's judgment that Ordinance No. 86503 does not violate Article 16, section 17 of the Texas Constitution. We agree with the trial court that the ordinance does not violate the Texas Constitution; however, we find that appellants raised a genuine issue of material fact with regard to whether the City Council violated the Texas Open Meetings Act ("TOMA") in passing Ordinance No. 86503 (the "Ordinance") relating to the appointment and reappointment of municipal court judges in August 1997. Accordingly, we reverse the trial court's order on that claim and remand for further proceedings. We, however, affirm the trial court's judgment as to appellants' state constitutional claim.

## BACKGROUND

The essential facts are undisputed by the parties. The City Council of San Antonio consists of eleven members—ten council members and one mayor. R. Robert Willmann was first appointed as a part-time municipal court judge on July 5, 1990. Brigid Sheridan was first appointed as a full-time municipal court judge on December 19, 1991. Ed Minarich was first appointed as a part-time municipal court judge on December 21, 1993. Pursuant to an ordinance passed and approved on August 31, 1995, appellants were each reappointed to their positions for a subsequent two-year term beginning on September 1, 1995.

In 1997, consistent with prior practice, the City Council appointed five of its members to comprise the Municipal Court Committee ("the Committee"). The Committee was chaired by Councilman Roger Flores, II. The Committee met on at least six occasions in July and August 1997 to review and discuss applicants for appointment and reappointment as municipal court judges. The meetings were attended by the presiding municipal court judge at the time, Judge Stella Ortiz Kyle. Judge Kyle took notes at the Committee meetings. The Committee meetings did not comply with the notice and recording requirements of TOMA.

In subsequent interdepartmental correspondence, the Committee advised the Mayor and City Council of the names of individuals the Committee recommended for appointment and reappointment as municipal court judges. Specifically, the Committee recommended three new full-time judges and the reappointment of eight full-time and four part-time judges. All the Committee members agreed with the individuals recommended for reappointment. Councilman Jeff Webster, however, did not sign in support of the new appointments. In its correspondence, the Committee requested the City Council's concurrence with its selection of candidates by ordinance at an open meeting to be held on August 28, 1997. Prior to the City Council meeting, by letter dated August 22, 1997, Councilman Flores informed appellants that the Committee had not recommended their reappointment, thanked them for their years of service, and wished them well in the future.

According to the deposition testimony of Councilman Flores, a copy of the interdepartmental correspondence and a draft of Ordinance No. 86503 were given to each City Council member a few days prior to the meeting of the full City Council. The draft ordinance included the names of the same individuals the Committee had recommended for appointment and reappointment in the Committee's interdepartmental correspondence. The ordinance was placed on the City Council's agenda for a meeting to be held on August 28, 1997.[2] The tape recording from the City Council meeting held on that date reflects that only the three new individuals recommended for full-time positions were discussed in depth. Councilman Ed Garza remarked that the Committee had assessed more than twenty applicants and had narrowed the field to seven. Council-

---

**2.** Ordinance No. 86503 contains the date of August 27, 1997. The summary judgment evidence included the agenda for a City Council meeting held on August 28, 1997. Item 40 of that agenda reflects that the City Council would be considering an ordinance appointing three new full-time municipal court judges, and reappointing eight full-time mu-nicipal court judges and four part-time municipal court judges. Additionally, the voting sheet reflecting each councilman's vote on Ordinance No. 86503 is dated August 28, 1997. Thus, it would appear that the ordinance was actually passed and approved on August 28, 1997.

man Webster acknowledged that as a Committee member he did not support the new appointees because he had reservations. He also stated that some changes were made with the current judges serving on municipal court and called it a "difficult situation." Councilman Flores reminded the City Council that they needed eight votes to pass the ordinance as an emergency vote. After this discussion, Ordinance No. 86503 was passed and approved by a vote of nine in favor and one against.[3] Under this ordinance, the appointments and reappointments were to run for a two-year term beginning September 1, 1997 and ending August 31, 1999. The ordinance provided that all persons presently holding an appointed position as judge but who were not listed in the ordinance would not be reappointed to their office. Appellants were not listed in the ordinance.

Appellants sued the City, alleging that Ordinance No. 86503 was void because all meetings of the Committee were in violation of Section 11 of the City Charter[4] and TOMA. Also, appellants claimed that because Ordinance No. 86503 failed to name successors to their positions, they had not been removed from office and their successors had not been duly appointed and qualified as required by Article 16, section 17 of the Texas Constitution. The City timely answered and subsequently filed a motion for partial summary judgment, asserting there was no evidence "that [the] City did not do something that it was legally required to do as to the City municipal

court committee meeting(s) or as to passing this Ordinance." Appellants responded and filed an amended original petition, alleging, among other things, that the City Council's action was a "rubber stamp" approval of the Committee's recommendations in violation of TOMA.

The trial court granted the City's motion, ruling that "there is no evidence or law to support the Plaintiffs' allegations that the Defendant City violated the Texas Open Meetings Act." A trial was held before the court on the remaining issue of whether appellants continued to hold office pursuant to Article 16, section 17 of the Texas Constitution. The trial court entered final judgment in favor of the City. Appellants filed a timely appeal to this court.

## STANDARD OF REVIEW

Our review of the trial court's rendition of summary judgment is *de novo. Reynosa v. Huff,* 21 S.W.3d 510, 512 (Tex.App.-San Antonio 2000, no pet.). We look at the evidence in the light most favorable to the non-movant against whom the summary judgment was rendered, disregarding all contrary evidence and inferences. *See Gomez v. Tri City Cmty. Hosp., Ltd.,* 4 S.W.3d 281, 283 (Tex.App.-San Antonio 1999, no pet.); *Moore v. K Mart Corp.,* 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a

---

**3.** One member of City Council was absent for the vote. Councilman Webster voted against passing the ordinance.

**4.** Section 11 of the City Charter of San Antonio provides the following:

All meetings of the Council shall be held at such times as may be prescribed by ordinance or resolution; but not less than one regular meeting shall be held each week, unless postponed for reasons to be spread

[sic] on the minutes which shall be kept of all Council meetings. Special meetings of the Council shall be called by the City Clerk upon the written request of the Mayor, the City Manager or three members of Council. All meetings of the Council and of any committees thereof shall be in compliance with the Texas Open Meetings Act as it may be amended from time to time.

SAN ANTONIO, TEX. CITY CHARTER, art. II, § 11.

scintilla of probative evidence to raise a genuine issue of material fact. *Id.; see also* Tex.R. Civ. P. 166a(i). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997).

### Texas Open Meetings Act

▪ With certain exceptions,[5] TOMA provides that every "regular, special, or called meeting of a governmental body shall be open to the public." Tex. Gov't Code Ann. § 551.002 (Vernon 1994). A core purpose of TOMA is to enable the public to have access to the actual decision-making process of its governmental bodies. *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765 (Tex.1991); *Cox Enter., Inc. v. Board of Tr. of Austin Ind. Sch. Dist.*, 706 S.W.2d 956, 960 (Tex.1986). As such, TOMA requires "openness at every stage of a governmental body's deliberations" because the citizens of Texas are entitled to know not only what government decided but also to observe how and why every decision is enacted. *See Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 300 (Tex.1990). The provisions of TOMA are mandatory and are to be liberally construed in favor of open government. *See Toyah Ind. Sch. Dist. v. Pecos–Barstow Ind. Sch. Dist.*, 466 S.W.2d 377, 380 (Tex.Civ.App.-San Antonio 1971, no writ).

Appellants maintain summary judgment was improper because there was a genuine issue of material fact that the City violated TOMA in passing the challenged Ordinance. Appellants specifically point to both the actions of the five-member Committee (one less than a quorum of the entire City Council) which considered all applicants for the office of municipal court judge in closed sessions, and to the actions of the City Council which, in turn, simply "rubber-stamped" the Committee's recommendations. Appellants contend the process as a whole raises a fact question that the Ordinance was passed in violation of TOMA.

In its response, the City stresses the Ordinance was clearly passed by the City Council in an open public meeting. Accordingly, there can be no evidence that the City violated TOMA. Furthermore, the City maintains the Municipal Court Committee was a proper advisory committee and not a "governmental body" subject to the requirements of TOMA.

▪ At the onset, we recognize that no Texas court of appeals has directly addressed a claimed violation of TOMA under the circumstances presented in this case. Therefore, we are faced with a matter of first impression. In conducting our analysis, we will first review relevant Texas Attorney General's opinions which, although are not binding on an appellate court, are considered persuasive. *Comm'rs Court of Titus County v. Agan*, 940 S.W.2d 77, 82 (Tex.1997); *City of San Antonio v. Baer*, 100 S.W.3d 249, 252 (Tex. App.-San Antonio 2001, no pet.). We then will consider the relevant Texas case law.

---

5. For example, TOMA provides that a governmental body is not required to conduct an open meeting "to deliberate the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of a public officer or employee." Tex. Gov't Code Ann. § 551.074(a)(1) (Vernon 1994). The City in the instant case did not seek to invoke this exception.

## A. Attorney General Opinions

The Texas Board of Mental Health and Mental Retardation (the "Board"), a state-level governmental body, asked the Texas Attorney General in 1973 if it could divide its membership into several subcommittees to "more efficiently manage its affairs." Op. Tex. Att'y Gen. No. H–3 at 1 (1973). The Board proposed that various committees would meet with staff to discuss and study matters before the Board. These committee meetings would not be open to the public, and notice regarding the meetings would not be given. The committee recommendation would then be considered by the full Board at its open public meeting. Id. The question before the Attorney General was whether this proposal would violate TOMA. Id. at 2. While the proposed committees did not constitute a quorum of the full Board and therefore could not bind the Board, the Attorney General opined that "a real danger exist[ed] that the full Board might become merely the 'rubber stamp' of one or more of its committees and thereby deprive public access to the effective decision making process." Id. at 4. Citing prior attorney general opinions, the Attorney General concluded that "a committee of Board members may not meet privately and without complying with the provisions" of TOMA for the purpose of formulating recommendations to be made to the full Board. Id. at 5.

In a later opinion, the Attorney General stated opinion H–3 was based, in part, on the concern that "if the public were excluded from such committee meetings, it would be deprived of access to the actual decision-making process and the purpose of the Act would be thwarted." Op. Tex. Att'y Gen. No. H–238 at 3 (1974). The Attorney General further reiterated that TOMA applies to the deliberations of committees into which a governmental entity has divided itself because they are an im-portant part of the entity's decision-making process. See id. According to the Attorney General, TOMA does not contemplate pro forma approval by governmental bodies of matters already privately determined by its members sitting in closed committee meetings. Id.; see also Op. Tex. Att'y Gen. No. 96–116 at 4 (1996) (stating a committee constituting less than a quorum may be subject to TOMA where the governmental body is likely to simply rubber stamp the committee's recommendation). On this basis, the Attorney General opined that the standing committees of a hospital district, when composed of members of the governing board, must comply with notice and open meeting requirements of TOMA. Op. Tex. Att'y Gen. No. H–238 at 4 (1974); see also Op. Tex. Att'y Gen. JM–1072 at 3–4 (1989) (committees compromised of one or more members of the board of trustees were subject to TOMA if they performed functions regarding matters affecting the school district).

In Opinion H–994, the Attorney General examined both the committee's stated purpose and actual practices to determine whether a committee appointed by the chairman of the University of Texas System Board of Regents was subject to TOMA. See Op. Tex. Att'y Gen. No. H–994 at 1 (1977). In its analysis, the Attorney General noted that TOMA does apply if the committee meets to discuss public business or policy; but does not apply to a purely advisory body which has no power to supervise or control public business. Id. at 2. The Attorney General then examined the resolutions that defined the committee's powers and the committee's actual practices to determine if additional authority was exercised as a matter of practice. Id. In addition, the Attorney General considered the committee's overall membership composed of three Regents and twelve other individuals outside the governmental body. According to the Attor-

ney General, the presence of individuals not related to the parent governmental body diminished the danger of rubber stamping. *Id.*

We think that this danger is diminished in the present case by the appointment of twelve other members who might represent different viewpoints within the university system. We strongly caution, however, that should the council actually function as a committee of the Board or as something more than an advisory body, and in fact supervise or control public business or policy, it will have to comply with the Act's provisions on notice and public meetings.

*Id.* at 2–3.

This same analysis is repeated in opinion JC–0060 in which the Attorney General opined that the initial work of a committee containing two members of a commissioners court and seven other individuals, which evaluated architectural firm applicants, did not fall under TOMA because of its advisory nature. *See* Op. Tex. Att'y Gen. No. JC–0060 at 3 (1999).

The Evaluation Committee's mission is to perform evaluations of architectural firm applicants and submit a recommendation in the form of a ranking of the firms to the commissioners court. As you indicate, the [c]ommittee's recommendation is not binding in any way on the court. Even though two members of the commissioners court are members of the [c]ommittee, the presence of seven other individuals attests to the likelihood that other viewpoints will be considered. In these circumstances, the commissioners court is less likely to "rubber-stamp" the [c]ommittee's choice. On the contrary, . . . even if the [c]ommittee ranked one firm in last place, the court could nevertheless award that firm the contract. The [c]ommittee's initial

work thus appears to be that of an advisory body, without power to supervise or control public business.

*Id.* at 3. In that same opinion, however, other work done by the committee to negotiate a contract with the selected firm was determined to be more than advisory. *Id.* at 3.

Unlike the ranking of architectural firms in the initial stage of the process, from which the commissioners court is at liberty to select the firm that the Evaluation Committee ranked in last place, the result of the negotiating process leaves no room for the commissioner's input: the court must either adopt or reject the contract negotiated by the Evaluation Committee.

*Id.* at 4. The Attorney General further reasoned that if the two commissioner court members that served on the committee approved the terms negotiated on a contract, only one more vote would be needed from the remaining commissioner court members to adopt the privately negotiated terms. *Id.* at 3. Accordingly, the Attorney General held the Evaluation Committee, under the facts described, was subject to TOMA. *Id.* at 5.

Consistent with these opinions, the Attorney General devotes a section to "Committees and Subcommittees of Governmental Bodies" in the *Open Meetings Handbook* published in 2002. John Cornyn, Office of the Attorney General-State of Texas, Open Meetings Handbook 14 (2002). In that publication, the Attorney General begins with the general proposition that members of a governmental body meeting in numbers less than a quorum are not subject to TOMA. He cautions, however, that there may be exceptions to that general rule including the following:

A committee or subcommittee appointed by a governmental body and

granted authority to supervise or control public business or public policy may itself fall within the definition of "governmental body." (Citations omitted).

\* \* \*

Even a committee or subcommittee without formal control over public business or public policy may be deemed a governmental body subject to the act if its decisions are in fact "rubber stamped" by the parent body. (Citations omitted).

*Id.* We next consider the relevant Texas case law.

*B. Texas Cases*

In *Hitt v. Mabry,* 687 S.W.2d 791, 796 (Tex.Civ.App.-San Antonio 1985, no writ), this court modified certain aspects of an injunction, but maintained a permanent injunction against the Board of Trustees of the San Antonio Independent School District ("SAISD") enjoining them from arriving at decisions involving public business or public policy affecting the SAISD by way of private informal meetings or telephone polls of board members. Mabry sought to prevent the mailing of a letter to all parents residing in the SAISD advising them of their voting rights and stating the message was a service of the Board of Trustees. *Id.* at 793. The letter was drafted by the board president after he had conducted an informal telephone poll of the board members. *Id.* Justice Cadena, in his dissent, disagreed with the majority's decision on the basis that the circumstances presented did not give rise to a violation of TOMA.

> Plaintiffs alleged that the use of the telephone polls was a conspiracy to circumvent the provisions of the Open Meetings Act.... As applicable to this case, the "governmental body" which is required to meet publicly is the Board of

Trustees, and the requirements that meetings of that body be public applies only when a quorum is present, since in the absence of a quorum there is no "meeting." Notice of deliberations is required only where the deliberation involves a quorum.

*Id.* at 798 (Cadena, J., dissenting). Essentially, Justice Cadena expressed the view that a violation of TOMA did not occur unless a quorum of the governmental body was physically present in one place. *See id.* Therefore, according to Justice Cadena, telephone polling did not involve a quorum and did not violate TOMA. *Id.* While not expressly addressed by the majority, it appears that the majority took the opposing view that the telephone polls conducted by Board members did violate TOMA. *See id.* at 796; *see also* Op. Tex. Att'y Gen. No. DM–95 at 5 (1992) (discussing *Hitt* ).

In *Harris County Emergency Serv. Dist. No. 1 v. Harris County Emergency Corps,* 999 S.W.2d 163 (Tex.App.-Houston [14th Dist.] 1999, no pet.), the court of appeals was faced with the issue of whether members of the Harris County Emergency Service District violated TOMA, and thereby could be enjoined from discussing district policy or business over the telephone with other board members. The court held that in order for there to be a violation there needed to be evidence of a "meeting" as defined under TOMA. *Id.* at 168. The court held that no violation occurred where the evidence reflected that less than a quorum of the district was involved in the telephone conversations. *Id.* at 169. The evidence also reflected that board members had merely discussed the matters they needed to put on the agenda for future meetings. *Id.* The evidence did not show that board members were using the telephone to avoid meeting as a quorum and thereby attempting to circumvent TOMA. *Id.* According to the

court, unlike the circumstances in *Hitt,* there was "no evidence that the district members were attempting to circumvent TOMA by conducting telephone polls with each other." *Id.* Accordingly, the court held the provision of the injunction prohibiting board members from discussing policy or business over the telephone with other board members was too broad. *Id.*

In *Finlan v. City of Dallas,* 888 F.Supp. 779 (N.D.Tex.1995), the federal district court addressed whether TOMA covered an ad hoc committee of the Dallas City Council. In that case, the federal district court enjoined the Downtown Sports Development Committee from meeting in closed sessions with third parties. The committee consisted of five city council members who met with constituents for the purpose of negotiating the establishment of a new arena. *Id.* at 781–82. Nine council members constituted a quorum of the city council. *Id.* The evidence considered by the district court in enjoining the city council included the city council's own rules that provided the committees were subject to TOMA with no exception made for ad hoc committees. *Id.* at 784. This led the district court to conclude that the city treated the ad hoc committee as a governmental body. On this basis, the district court rejected the city's argument that the committee did not constitute a quorum of city council, noting that only three members were needed to make a quorum of the committee. *Id.* With five members of the committee in favor of an arena, as well as the Mayor who appointed them, only two more votes would be needed from the remaining members of city council to agree to the deal negotiated by the committee. *Id.* at 786. According to the district court, the city's argument raised the concern that "a real danger exists that the full city council is merely a 'rubber stamp' of the Committee." *Id.* at 785. Important to the district court's deci-

sion was the fact that it did not receive a clear answer to its inquiry regarding why there was no quorum of the full city council. *Id.* at 786. The district court considered this circumstantial evidence that the committee was designed to circumvent TOMA. *Id.*

Finally, in *Esperanza Peace and Justice Ctr. v. City of San Antonio,* No. SA–98–0696–OG, 2001 WL 685795, at *30 (W.D.Tex. May 15, 2001), the mayor of San Antonio met with several city council members and spoke with others on the phone in the City Manager's office regarding the city budget the night before an open city council meeting. The evidence reflected that the participants in these discussions carefully avoided the physical presence of a quorum of city council. *Id.* For example, on several occasions, the City Manager informed the group that there were too many people together and that they risked violating TOMA. *Id.* In response, one or more city council members would leave the office. *Id.* The discussions led to a unanimous agreement encompassed in a consensus memorandum regarding the city budget changes. *Id.* at *31. All council members signed the draft consensus memorandum to be considered at the open city council meeting. *Id.* While the members understood that the memorandum was not binding, no amendments were offered and no debate occurred at the open meeting. *Id.* The budget adopted essentially reflected the agreement in the consensus memorandum. *Id.*

The City argued that no violation of TOMA occurred because a quorum was never present in the City Manager's office. *Id.* at *32. The district court disapproved of this argument by stating, in part, the following:

If a governmental body may circumvent the Act's requirements by "walking quorums" or serial meetings of less than a quorum, and then ratify at a public meeting the votes already taken in private, it would violate the spirit of the Act and would render an unreasonable result that was not intended by the Texas legislature. Thus, a meeting of less than a quorum is not a "meeting" within the Act when there is no intent to avoid the Act's requirements. *On the other hand, the Act would apply to meetings of groups of less than a quorum where a quorum or more of a body attempted to avoid the purposes of the Act by deliberately meeting in groups less than a quorum in closed sessions to discuss and/or deliberate public business, and then ratifying their actions as a quorum in a subsequent public meeting.* *Id.* at *35 (emphasis added). The district court then assessed whether the evidence established an intentional violation of TOMA. The district court considered the fact that the mayor met with council members constituting less than a quorum to reach a conclusion; the City Manager kept track of the number of council members present so as to avoid a formal quorum; the consensus reached was memorialized in a memorandum containing the signatures of each council member; and the consensus was "manifested" when adopted at an open meeting. *Id.* In light of this evidence, the district court concluded "a clearer manifestation of intent to reach a decision in private to avoid the technical requirements of the Act [could] hardly be imagined." *Id.*

C. *Analysis*

■ Appellants argue summary judgment was improper because there was a genuine issue of material fact that the City violated TOMA in passing the challenged Ordinance. The City maintains the summary judgment was proper because it is undisputed that the attacked ordinance was passed in an open meeting by the only governmental body of the City of San Antonio, the City Council. Furthermore, the City argues the municipal court committee was not required to comply with open meeting requirements of TOMA because it was not a governmental body under the Act, but was a proper and necessary advisory committee allowed under the City Charter.

In support of its arguments, the City stresses that TOMA relies heavily on defined terms, and requires only a "meeting" of a governmental body to be open to the public. According to the City, the members of the Committee did not engage in a "meeting" as that term is defined since it is undisputed the Committee was made up of less than a quorum of the City Council. *See* Tex. Gov't Code Ann. § 551.001(4) (Vernon 1994) (defining "meeting" as a deliberation between a quorum of a governmental body). In essence, the City would have us find that meetings are required to be public only when a quorum is present, since in the absence of a quorum there is no "meeting." We disagree.

■ Contrary to the City's position, a governmental body does not always insulate itself from TOMA's application simply because less than a quorum of the parent body is present. *Esperanza Peace and Justice Ctr.,* 2001 WL 685795, at *30; *Finlan,* 888 F.Supp. at 782 & 785 (N.D.Tex. 1995); *Hitt,* 687 S.W.2d at 796; John Cornyn, Office of the Attorney General-State of Texas, Open Meetings Handbook 14 (2002). A committee appointed by a governmental body constituting less than a quorum of its members may be subject to TOMA because it falls either within a definition of the term "governmental body" or as a subcommittee of a governmental body. *See* Op. Tex. Att'y Gen. No. JC–0060 at 3

(1999). Accordingly, we reject the City's strict reading of the definition of "meeting" under TOMA, because it would be contrary to our mandate to liberally construe TOMA's provisions in order to safeguard the public's interest in open government. *See Acker,* 790 S.W.2d at 300. Furthermore, our conclusion is consistent with the language in section 551.143(a) which specifically prohibits members of a governmental body from knowingly conspiring to circumvent TOMA by meeting in numbers *less than a quorum.* "Indeed it would appear that the legislature intended expressly to reach deliberate evasions of these definitions in enacting [section 551.143(a)]." Op. Tex. Att'y Gen. No. DM–95 at 5 (1992); *see* Op. Tex. Att'y Gen. No. JC–0307 at 5–6 (2000).

▪ The City also argues that the Municipal Court Committee is not a "governmental body" as defined under TOMA because it is not "a deliberative body that has rule making authority or quasi-judicial power." TEX. GOV'T CODE ANN. § 551.001(3)(D) (Vernon 1994). The City points to the City Charter which provides that the City Council may create boards and committees to assist it in an advisory capacity in the performance of its duties. *See* SAN ANTONIO, TEX. CITY CHARTER, art. V, § 49. We agree with the City that the definition of a governmental body generally comprehends an entity with the power to supervise or control public business. We also agree that the City Charter of San Antonio enables the City Council to create committees to assist it in a purely advisory capacity.[6] The critical issue be-

fore us, however, is whether the evidence presented at summary judgment raises a question of fact that the Committee was more than an advisory committee in actual practice and, thus, subject to the open meeting requirements of TOMA.

It is undisputed that the Committee was established by the City Council. According to Councilman Flores, the Committee consisted of five members because the City Council would be in violation of TOMA if it had six members. When asked in deposition why the Committee consisted of five members, Councilman Flores responded as follows:

Q: Why were there only five?

A: Five? Usually that's the—that was the way that the committees were set up. Because you can't have six people. You can only have five. Otherwise it would be I guess like having a meeting of Council.

Q: In other words, if they had a committee of six, under your recollection of it, it would then have to abide by the provisions of the Open Meeting[s] Statute.

A: Right. Yeah. Exactly.

Q: I don't mean to be putting words in your mouth.

A. No. But that's right. Because you couldn't hold a meeting with six people because then that would be a violation. Exactly.

Q: Unless there was a public notice and agenda and all that and everything published?

---

**6.** We recognize that in *Finlan,* the trial court considered the fact that the City Charter of Dallas required council committee meetings to be open and that the city council's rules of procedure mandated that committee meetings must be conducted in accordance with TOMA. 888 F.Supp. at 784. Similarly, in this case, section 11 of Article II of the City Charter

provides that meetings of any committees of the City Council must be in compliance with TOMA. In this case, however, we do not consider section 11 of the San Antonio City Charter to be evidence in support of appellants' position because the section was not presented as evidence for the trial court to consider.

A.	Right.	Like we do for the City Council meetings.

Councilman Flores's testimony regarding the composition of the Committee could be viewed one of two ways. Councilman Flores's testimony could be construed as merely his understanding of TOMA. On the other hand, his testimony could also be construed as an attempt by City Council to avoid the presence of a quorum and, therefore, avoid application of TOMA to Committee meetings.

The evidence also shows the Committee was made up exclusively of city council members who met on several occasions to review the applicants for municipal court judges. Notice was not posted regarding the Committee's meetings, and tape recordings were not made. After assessing the various applicants for appointment and reappointment, the Committee compiled a list of individuals recommended for the position of municipal court judges in the form of a draft ordinance to be voted on at an open meeting of the City Council. Letters informing appellants they were not recommended for reappointment, thanking them for their years of service, and wishing them well in the future were sent out six days *before* the City Council's vote on Ordinance No. 86503. At the open meeting, the Committee's recommendations were approved without meaningful discussion by the City Council. The tape recording for the City Council meeting held on August 28, 1997, begins with the Mayor ordering "up and quickly" agenda item number 40, which was the draft of Ordinance No. 86503. There was no discussion regarding all the individuals who had applied and reapplied for appointment, the individuals who were not recommended, or the criteria the Committee used in determining its recommendations. Instead, the discussion centered on the three new individuals recommended for full-time appointments. Finally, there was evidence the

City Council had consistently passed and approved the Committee's recommendations without change from July 1990 through November 1998.

Arguably, the evidence suggests *pro forma* public approval or "rubber stamping" by the City Council of matters already determined by the Committee sitting in closed meetings which the Attorney General and Texas courts have warned can violate TOMA. *See Finlan,* 888 F.Supp. at 785–86; Op. Tex. Att'y Gen. No. JC–0060 at 3–5 (1999); Op. Tex. Att'y Gen. No. H–238 at 3 (1974); John Cornyn, Office of the Attorney General–State of Texas, Open Meetings Handbook 14 (2002). The letters informing appellants they would not be reappointed suggest an assumption by the Committee that its decision was final and, therefore, not advisory. Further, there was no substantive discussion regarding the various applicants at the open meeting. Finally, there was a pattern of the City Council consistently passing and approving the Committee's recommendations for municipal court judges over an eight-year period. In light of our standard of review, we conclude the evidence rises to the level that would enable reasonable and fair-minded people to differ in their conclusions.

Accordingly, we hold the trial court erred in granting the City's no-evidence motion for partial summary judgment. We sustain appellants' first four issues.

### ARTICLE 16, SECTION 17 OF THE TEXAS CONSTITUTION

■ Appellants also argue that the wording of Ordinance No. 86503 violates Article 16, section 17 of the Texas Constitution and section 160 of the City Charter. The parties went to trial on these claims. At trial, the parties stipulated to certain facts, including the following: (1) no spe-

cific individuals were named as appellants' successors; (2) appellants were not removed from office for cause as provided by the Texas Government Code; (3) appellants did not give the City a notice of resignation; and (4) the City has not passed or approved an ordinance that abolished the municipal court offices held by appellants. Additionally, Ordinance No. 86503 did not specifically name appellants as being removed. Appellants contend that under these facts they remain municipal court judges as required by the Texas Constitution and the City Charter.

In asserting that the trial court erred in refusing to find Ordinance No. 86503 violates the Texas Constitution and the City Charter, appellants appear to be challenging the trial court's conclusion of law. We review questions of law under a *de novo* standard of review without deference to the trial court's conclusion. *See Interstate Northborough P'ship v. State,* 66 S.W.3d 213, 220 (Tex.2001); *State v. Heal,* 917 S.W.2d 6, 9 (Tex.1996).

▬▬▬▬ Under Section 160 of the City Charter of San Antonio, officers are to hold over until their successors are appointed and qualified.

> Whenever under the provisions of this Charter any officer of the City, judge or member of any board or commission is appointed for a fixed term, such officer, judge or member shall continue to hold office until his successor is appointed and qualified.

SAN ANTONIO, TEX. CITY CHARTER art. XII, § 160. The Texas Constitution states that "all officers within the State shall continue to perform the duties of their offices until their successors shall be duly qualified." TEX. CONST. art. XVI, § 17. The commentary to this section provides that this provision was placed in the Texas Constitution, in part, to "prevent public convenience from suffering because of a vacancy in the office. . . ." TEX. CONST. art. XVI, § 17 interp. commentary (Vernon 1993); *see also Plains Common Consol. Sch. Dist. No. 1 v. Hayhurst,* 122 S.W.2d 322, 326 (Tex.Civ.App.-Amarillo 1938, no writ). Even where an officer resigns, under this section, he or she is held over in the performance of their duties until a successor is elected or appointed and has been qualified. *See* Op. Tex. Att'y Gen. H–161 at 2 (1973). This holdover provision becomes operative only after the officer's term has expired. Op. Tex. Att'y Gen. JC–0293 at 3 (2000). On the other hand, the right to holdover does not reside in one who has been removed from office. *See Manning v. Harlan,* 122 S.W.2d 704, 707 (Tex.Civ.App.-El Paso 1938, writ dism'd). Ordinance No. 86503 effectively removed appellants from office. Because appellants were removed from office, Article 16, section 17 does not apply to the instant circumstances. The facts, as agreed to by the parties, reflect that there were the same number of judges after appellants' terms had expired as there were when appellants were in office. Therefore, no vacancy occurred in the office of municipal court judge that resulted in public inconvenience to warrant the application of Article 16, section 17 of the Texas Constitution.[7]

---

**7.** By asking this court to hold that Ordinance No. 86503 violates Article 16, section 17 of Texas Constitution, appellants are asking us to hold that this provision prohibits a governmental entity from removing an officer from office. However, appellants do not cite nor can we find case law to suggest that section 17 prohibits a governmental body from removing an officer from office. Additionally, appellants argue that Ordinance No. 86503 violates Article 16, section 17 because successors were not specifically named as replacing them. While Article 16, section 17 contemplates that a successor be "duly qualified," it

Because we hold that Article 16, section 17 of the Texas Constitution does not apply to the circumstances presented, we overrule appellants' fifth and sixth issues.

### CONCLUSION

We hold that appellants presented sufficient evidence to raise a genuine issue of material fact on their claim that the City violated the Texas Open Meetings Act in passing and approving Ordinance No. 86503. We also hold, that the trial court did not err in concluding that Ordinance No. 86503 does not violate Article 16, section 17 of the Texas Constitution. We reverse the trial court's judgment as to appellants' claim under the Texas Open Meetings Act and remand that claim to the trial court for further proceedings consistent with this opinion. We affirm the trial court's judgment in all other respects.

does not expressly state that this means successors must be specifically named. We refuse to read into this provision such a requirement.