The CITY OF LAREDO, Texas, Appellant,

v.

Martha ESCAMILLA, Maria Gloria Gonzalez, and Webb County, Texas, Appellees.

No. 04–05–00456–CV.

Court of Appeals of Texas, San Antonio.

Nov. 1, 2006.

Bob E. Shannon, Joseph R. Knight, Susan Dillon Ayers, Baker Botts L.L.P., Austin, Jaime L. Flores, City Atty.–Webb County, Laredo, for appellant.

James P. Allison, Allison, Bass & Associates, L.L.P., Austin, Richard J. Gonzalez, Laredo, for appellees.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice (dissenting without opinion).

## OPINION

Opinion by CATHERINE STONE, Justice.

Appellees, Martha Escamilla, Maria Gonzalez, and Webb County, Texas sued appellant, the City of Laredo (the "City"), for committing multiple violations of the Texas Open Meetings Act ("TOMA") in connection with the purchase of a parcel of real property located in Laredo, Texas. The City filed a traditional motion for summary judgment on the appellees' claims of violations of TOMA. The Citizens and Webb County responded by filing their own traditional motions for summary judgment, contending they were entitled to judgment as a matter of law because: (1) the City was not entitled to meet in a closed session to discuss the purchase of the real property under TOMA; and (2) the City did not provide sufficient public notice of the closed session meeting under TOMA. The trial court granted summary judgment in favor of Escamilla, Gonzalez, and Webb County, denied the City's motion for summary judgment, and declared the City's vote to purchase the real property invalid and void. We affirm.

## BACKGROUND

In 1989, the United Independent School District ("UISD") and Webb County foreclosed on a 17.331—acre parcel of land located in Laredo, Texas for nonpayment of property taxes. The UISD and Webb County purchased the property, One River Place, for $15,080 when there were no bidders at the foreclosure sale.[1] The UISD retained a 73.4% ownership interest

---

1. The property is referred to as "One Riverside Place," "One River Front," and "One River Place Homeowners Subdivision" throughout the record. For purposes of this opinion, we shall refer to the property as "One River Place."

in the property and held the remaining 26.6% interest in trust for Webb County. By November 2001, One River Place had an appraised value of $35,875.

On November 5, 2003, attorney Ricardo de Anda, who acted as a tax collections attorney for both the City of Laredo and the UISD, delivered a letter to the Assistant Superintendent of the UISD concerning the City's purported interest in purchasing One River Place from the UISD. The letter provided:

We [ (the UISD) ] are in receipt of an offer from the City of Laredo, by Mr. Larry Dovalina, City Manager, to purchase [17.331 acres in the One Riverplace Subdivision] which is currently being held by the United ISD as Trustee for itself and for Webb County ... The City is offering to purchase the property for $42,000 ... UISD may sell the property directly to the City as a private sale without the need to advertise for bids or to obtain prior approval from Webb County for the offered amount ... We suggest that you present this offer to the [UISD] Board [of Trustees] for their consideration in executive session [and act on the offer in open session].

The UISD Board of Trustees voted to approve the sale of One River Place to the City on December 17, 2003. The UISD passed a resolution, on January 21, 2004, declaring, "It is ... resolved by the Board of Trustees of the United Independent School District that the District accepts the offer of $42,000 made by the City of Laredo as the purchase price for" One River Place. The UISD Board of Trustees also executed a warranty deed conveying One River Place to the City for the consideration of $42,000. The UISD forwarded its resolution and the warranty deed to City Manager Dovalina shortly thereafter.

The City Council for Laredo posted notice of a meeting to be held on February 2, 2004 to discuss, among other items, the purchase of One River Place. The notice listed all of the agenda items for that meeting, which included:

40. Request for Executive Session pursuant to Texas Government Code [§ ] 551.072 in order to deliberate the possible purchase, lease, or value of a parcel of land in South Laredo because deliberation in an open meeting would have a detrimental effect on the position of the City Council in negotiations with third persons; and return to open session for possible action and direction to staff.

The Laredo City Council met on February 2nd in open session and announced that it was going into closed session. During the closed session, City Manager Dovalina "presented the offer of sale which [he] had received from [the UISD] ... for discussion and consideration as to the price offered." The council reconvened in open session after it had concluded its closed session and voted "to authorize [the] City Manager to proceed with [the] purchase of 17.331 acres of land out of One River Place subdivision for the sum of $42,000 to be used for public purposes." The warranty deed conveying the property to the City was recorded on February 3, 2004.

Citizens of the City of Laredo, Martha Escamilla, and Maria Gonzalez (the "Citizens"), subsequently sued the City for declaratory relief, complaining the City committed multiple violations of TOMA in connection with its purchase of One River Place. The Citizens sought a declaration that the City had violated TOMA and that the City's purchase of One River Place was invalid and void. Webb County later intervened, seeking a declaration that the City's actions concerning One River Place were invalid based on the City's multiple violations of TOMA.

The City filed a traditional motion for summary judgment on the Citizens' and

Webb County's claims of violations of TOMA. The Citizens and Webb County responded by filing their own traditional motions for summary judgment, contending they were entitled to judgment as a matter of law because the City: (1) was not entitled to meet in closed session to discuss the purchase of One River Place; and (2) did not provide sufficient notice for the February 2, 2004 meeting. After a hearing on the competing motions for summary judgment, the trial court sent a letter to the parties notifying them of its decision to grant the Citizens' and Webb County's motions for summary judgment and deny the City's motion.[2] The court subsequently entered judgment granting the Citizens' and Webb County's motions for summary judgment and denying the City's motion.[3] The court's judgment also provides:

> It is therefore ordered, adjudged, and decreed that the City of Laredo's notice for the Meeting of February 2, 2004 was legally insufficient, as a matter of law, to satisfy the real estate exception contained in [section] 551.072 of the Texas Open Meetings Act, or to provide the public with adequate notice of the specific nature of governmental action taken. It is further ordered, adjudged, and decreed that the vote taken by the City Council for the City of Laredo on February 2, 2004 to purchase the property identified as 17.331 acres out of the One River Place Subdivision to the City of Laredo, is hereby declared invalid and void, pursuant to the authority vested in this Court by [section] 551.141 of the Texas Open Meetings Act.

The City's appeal followed.

### STANDARD OF REVIEW

The standards for reviewing summary judgments are well settled. *See Nixon v.*

*Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). When cross-motions for summary judgment are filed, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 356 (Tex.2000). The appellate court should determine all questions presented when the trial court grants one motion and denies the other. *Id.* The appellate court should render the judgment that the trial court should have rendered. *Id.* at 356–57.

### TEXAS OPEN MEETINGS ACT

■ TOMA is intended to provide public access to and increase public knowledge of government decision making. *City of San Antonio v. Fourth Court of Appeals,* 820 S.W.2d 762, 765 (Tex.1991). It "is not a legislative scheme for service of process; it has no due process implications. Rather, its purpose is to provide 'openness at every stage of [a governmental body's] deliberations.'" *Id.* (quoting *Acker v. Tex. Water Comm'n,* 790 S.W.2d 299, 300 (Tex.1990)). TOMA therefore mandates that "every regular, special, or called meeting of a governmental body shall be open to the public," with certain narrowly drawn exceptions. TEX. GOV'T CODE ANN. §§ 551.002, 551.071–551.088 (Vernon 2004); *see Willmann v. City of San Antonio,* 123 S.W.3d 469, 473 (Tex. App.-San Antonio 2003, pet. denied). One of the exceptions authorizes governmental bodies to "conduct a closed meeting to deliberate the purchase, exchange, lease, or value of real property if deliberation in an open meeting would have a detrimental effect on the position of the governmental body in negotiations with a third person." TEX. GOV'T CODE ANN. § 551.072.

---

2. The trial court's letter also detailed the reasons for the court's decision.

3. The court's judgment incorporated its earlier letter opinion by reference.

TOMA requires advanced written notice of all meetings held by a governmental body: "A governmental body shall give written notice of the date, hour, place, and subject of each meeting." TEX. GOV'T CODE ANN. § 551.041. The notice provided by the governmental body must be sufficiently specific to alert the general public to the topics to be considered at the upcoming meeting. *Cox Enterps., Inc. v. Bd. of Trus.*, 706 S.W.2d 956, 959 (Tex.1986). Courts must be careful to ensure that the notice serves the core purpose of the Act. *City of San Antonio*, 820 S.W.2d at 765. "However, [courts] need not go further and inquire into whether a notice was tailored to reach those specific individuals whose private interests are most likely to be affected by the proposed government action. The intended beneficiaries of the [statute] are not individual citizens ... but members of the interested public. If a 'reader' is given notice, the requirement[s] of [TOMA are] satisfied and its purpose served." *Id.*

General notice in certain cases is considered substantial compliance with the statute even though the notice is not as specific as it could be. *Cox*, 706 S.W.2d at 959–60. "The notice must be more specific if the public has a special interest in the topic under discussion." *Markowski v. City of Marlin*, 940 S.W.2d 720, 726 (Tex. App.-Waco 1997, writ denied); *see also Point Isabel Indep. Sch. Dist. v. Hinojosa*, 797 S.W.2d 176, 180 (Tex.App.-Corpus Christi 1990, writ denied). If the contents of a notice are undisputed, its adequacy is a question of law. *Weatherford v. City of San Marcos*, 157 S.W.3d 473, 486 (Tex. App.-Austin 2004, pet. denied).

"The provisions of TOMA are mandatory and are to be liberally construed in favor of open government." *Willmann*, 123 S.W.3d at 473. If a governmental body violates TOMA, any actions taken by the body are voidable. TEX. GOV'T CODE ANN. § 551.141.

## VIOLATIONS OF THE TEXAS OPEN MEETINGS ACT

In order to resolve this appeal, we must decide whether the City violated TOMA. The Citizens and Webb County maintain the City violated TOMA because the City's closed session discussion of the purchase of One River Place did not fall within the real estate exception. They further allege that the City violated TOMA by failing to give adequate public notice that it would hold a closed session to discuss the purchase of One River Place. The City counters that the Citizens and Webb County are precluded from asking this court to affirm the trial court's judgment on appeal based on the ground that the City violated TOMA by holding a closed session to discuss the purchase of One River Place because the trial court did not grant the Citizens or Webb County summary judgment on this basis. The City argues that the Citizens and Webb County were required to file their own notice of appeal if they wanted this court to consider this ground as a basis for affirmance of the judgment. The City further contends that its notice of the closed session regarding One River Place was adequate under TOMA.

With respect to the City's argument that the trial court failed to rule on the Citizens's and Webb County's alternative ground for summary judgment, we believe the City's argument lacks merit. The trial court's judgment provides: "the City of Laredo's notice for the Meeting of February 2, 2004 was legally insufficient, as a matter of law, to satisfy the real estate exception contained in [section] 551.072 of the Texas Open Meetings Act, or to provide the public with adequate notice of the specific nature of governmen-

tal action taken." Contrary to the City's contention, the trial court's judgment sufficiently apprises the litigants that the court concluded: (1) the real estate exception does not apply to the present matter; and (2) the City did not provide the public with adequate notice of the subject matter of the meeting. In any event, even if we were to accept the City's argument that the trial court's judgment rests solely upon the ground that the City failed to provide adequate notice to the public, we are not precluded from considering appellees' alternative ground for summary judgment as a possible basis for affirmance merely because the appellees failed to file their own notices of appeal. *See Ash v. Hack Branch Distrib. Co.*, 54 S.W.3d 401, 409 n. 2 (Tex.App.-Waco 2001, pet. denied) ("Because [appellee] does not seek to alter the judgment, we conclude that it may properly assert independent grounds for affirmance of the judgment even though it did not file its own notice of appeal. This seems particularly apt in a summary judgment case in which the movant is the appellee because the Supreme Court has expressly held that an 'appellate court may consider other grounds that the movant preserved for review and [the] trial court did not rule on in the interest of judicial economy.' "); *see also Hensley v. Village of Tiki Island*, No. 14–03–00423–CV, 2004 WL 2162637, *8 n. 10 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (mem.op.) (recognizing an appellee may assert additional, independent grounds for affirmance of the judgment, even if it does not file a notice of appeal, as long as such grounds were raised in appellee's motion for summary judgment); *Carrico v. Kondos*, 111 S.W.3d 582, 587 n. 4 (Tex.App.-Fort Worth 2003, pet. denied) (allowing appellees to assert additional, independent grounds for affirmance of the judgment, which were denied by trial court, even though appellees did not file their own notice of appeal);

and *Bosque Asset Corp. v. Greenberg*, 19 S.W.3d 514, 520 (Tex.App.-Eastland 2000, pet. denied), *overruled in part on other grounds by, Hight v. Dublin Veterinary Clinic*, 22 S.W.3d 614 (Tex.App.-Eastland 2000, pet. denied) ("If an appellee is satisfied with the relief granted by the trial court, but merely wants to present additional, independent grounds for affirming the trial court's judgment, no notice of appeal is required.").

■ In this case, the Citizens' and Webb County's motions for summary judgment allege the City failed to establish that open deliberation of the purchase of One River Place would have a detrimental effect on the City's negotiations with a third person as required by the real estate exception. In support of their summary judgment motions, the Citizens and Webb County attach evidence showing that, around November 3, 2003, the UISD Board of Trustees received what they perceived to be an offer from the City to purchase One River Place for the sum of $42,000. The UISD Board of Trustees evaluated the City's alleged offer in executive session on December 17, 2003. Upon reconvening in open session, the UISD Board of Trustees voted to approve the sale of One River Place to the City. On January 21, 2004, the UISD passed a resolution declaring, "It is . . . resolved by the Board of Trustees of the United Independent School District that the District accepts the offer of $42,000 made by the City of Laredo as the purchase price for" One River Place. The UISD Board of Trustees also executed a warranty deed conveying One River Place to the City for the consideration of $42,000.

The Citizens' and Webb County's summary judgment evidence further shows that the City had received the UISD Board of Trustees' resolution and warranty deed for One River Place before it

posted notice for its February 2004 session. In addition, City Manager Dovalina acknowledged during his deposition testimony that the City included language in its notice for the February 2004 meeting indicating that "deliberation in an open meeting would have a detrimental effect on the position of the city council in negotiations with third persons" because the City uses this particular language whenever it posts notice concerning the purchase of real property. According to Dovalina, such language is the "standard posting language" used by the City when "purchasing any tract of land."

By contrast, the City's motion for summary judgment alleges that the City did not violate TOMA by holding a closed session to discuss the purchase of One River place because "the tender of the deed by United Independent School District constituted and was understood by City Manager Dovalina to represent an offer to sell [One River Place] to the City of Laredo, at an offered price. Therefore, as a matter of law, the City council was entitled to meet in an executive session to discuss the offer." The City, however, did not submit any evidence in support of its motion that would indicate open deliberation of the purchase of One River Place would have a detrimental effect on the City's negotiations with a third party.

After reviewing the evidence presented, we conclude the trial court properly granted summary judgment in favor of the Citizens and Webb County because the City's closed session discussion concerning One River Place did not fall within the real estate exception to TOMA. *See* TEX. GOV'T CODE ANN. § 551.072. There is simply noth-

ing in the summary judgment record showing that an open discussion about One River Place would impede the City's negotiations with a third party. The record shows that the City convenes in closed session pursuant to the real estate exception each time it intends to discuss the purchase of real property, regardless of whether the City's deliberation process would impede the City's negotiations with a third party. If this is in fact the City's standard operating procedure, such procedure is contrary to the spirit of TOMA, whose provisions "are to be liberally construed in favor of open government." *See Willmann*, 123 S.W.3d at 473; *see also Finlan v. City of Dallas*, 888 F.Supp. 779, 790 (N.D.Tex.1995) (noting the real estate exception is "not [a] magic talisman[ ] that can be dragged out every time a body subject to TOMA wants to have a secret meeting."). The real estate exception, again, speaks to matters that, if disclosed publicly, would put the City at a negotiating disadvantage. It is hard to see how this narrowly drawn exception applies under the circumstances presented.[4] Because disclosure of the purchase of One River Place would not be detrimental to the City's position under the facts presented, we must conclude the City violated TOMA by holding a closed session to discuss the purchase of One River Place.

Even though the City presented no evidence demonstrating the applicability of the real estate exception, it still maintains that this case is analogous to *Save Our Springs Alliance, Inc. v. Austin Independent School District*, 973 S.W.2d 378 (Tex. App.-Austin 1998, no pet.). In *Save Our*

---

4. It appears unlikely that public disclosure of this matter would be detrimental to the City's position in this case in light of the fact that the City already possessed a resolution and warranty deed from the UISD Board of Trustees conveying One River Place to the City for $42,000. All that the City had left to do to complete the conveyance was to approve the purchase of the property in open session and to pay the UISD the purchase price denoted in the deed.

*Springs,* the Austin ISD held a series of public meetings to decide where to locate several new schools it planned to erect within the district. 973 S.W.2d at 380. As a result of these public discussions, the Austin ISD selected two areas within the district determined to have the greatest need for new schools. *Id.* The Austin ISD subsequently conducted a series of closed meetings to consider the available properties within the two areas it had selected. *Id.* Over the course of the closed meetings, the Austin ISD culled the available properties until two were left in one area and three were left in the other. *Id.* At that point, the Austin ISD conducted another public hearing to receive comments on the narrowed list of available properties. *Id.* The Austin ISD then notified the public that it would meet in closed session to consider the final school site selections. *Id.* Following a closed session discussion of the school sites, the Austin ISD reconvened in open session and formally selected one property in each of the designated areas. *Id.*

Appellants, citizen groups advocating preservation of the environment and certain neighborhoods in Austin, sued the Austin ISD, alleging the district violated TOMA by discussing the school site selection in closed session. *Id.* Appellants sought a declaration that the Austin ISD had violated TOMA and that the district's subsequent vote was void or voidable. *Id.* The Austin ISD responded by filing a motion for summary judgment, which the trial court granted. *Id.* On appeal, appellants alleged the trial court's summary judgment decision was improper because the Austin ISD's discussion of the potential school sites in closed session did not fall within the real estate exception. *Id.* at 381. According to the appellants, the real estate exception did not apply since: (1) the district already owned one of the potential sites in one relief area; and (2) the

district had already entered into an earnest money arrangement on one of the potential sites in the other relief area. *Id.* The appellants maintained the Austin ISD was no longer involved in negotiations with respect to these two properties when it discussed them in the closed meeting; thus, the district's closed discussion of all of the properties fell outside the real estate exception. *Id.*

The *Save Our Springs* court specifically addressed the issue of whether the district had established that open deliberation of the value of the properties would have had a detrimental effect on the Austin ISD's negotiations with a third person. *See id.* at 382. The Austin ISD contended in its motion for summary judgment that no material fact issue existed as to whether open discussion of the pros and cons of the two or three available properties in each of the designated areas would have had a detrimental effect on the district's subsequent negotiations, if any ensued. *Id.* In its summary judgment proof, the Austin ISD provided a transcript of testimony given at a temporary injunction hearing from an individual who had been present at the closed meetings. *Id.* The witness's testimony indicated that "if a landowner got the impression that the District preferred his or her property over other property, it would be more difficult for the District to bargain with that landowner in terms of price." *Id.* The Austin ISD's evidence also revealed that a representative of the Austin ISD averred on this point. *Id.* at 382–83. The district's summary judgment proof also included statements suggesting that the Austin ISD was not involved in any negotiations on at least one of the potential sites in each relief area. *Id.* at 383. "That is, the District already owned one of the potential sites in one relief area and it had entered into an earnest money

contract locking in the purchase price for a site in the other relief area." *Id.* The proof included statements from Austin ISD representatives indicating that open discussion about those two sites in particular would not impede any subsequent negotiations regarding those properties because there were no subsequent negotiations to be had with respect to those two properties. *Id.* The proof also revealed that, in the end, the Austin ISD chose the two sites it had already purchased or contracted to purchase. *Id.*

With respect to this issue, the Court stated:

> Appellants contend this proof pertaining to those two particular properties reveals that the District's closed session discussions were unauthorized. We disagree. The District's proof reveals that the District had not selected the middle school sites for the two relief areas before the closed discussions. Furthermore, the proof reveals that the price of all but two of the potential sites had not been negotiated before the closed meetings. Because the District was considering locating the middle schools on properties other than the ones already negotiated, the closed session discussion regarding the relative feasibility and desirability of all of the potential sites would have had a detrimental effect on future negotiations about the non-negotiated properties, according to two District representatives. Nothing in the District's proof suggests the District had already chosen the sites before the closed meetings or that the District discussed other sites as a subterfuge. For that reason, that the District ultimately selected the pre-negotiated sites is of no consequence. The District established

that its closed discussions satisfied the second element of the real estate exception.

*Id.*

The case at bar, however, is distinguishable from *Save Our Springs*. First, in *Save Our Springs*, the Austin ISD presented summary judgment evidence demonstrating that open discussion concerning the real property would have a detrimental effect on future negotiations with non-negotiated properties. By contrast, the City provided no such evidence in this case. Second, in *Save Our Springs*, the Austin ISD was deliberating the purchase of one of several properties, discussing the value of each property in comparison to the value of the other properties. Here, the City was deliberating the purchase of only one parcel of property; a property to which the City already possessed a warranty deed setting the purchase price for the property at $42,000. Based on the foregoing, we hold the trial court properly: granted summary judgment in favor of the Citizens and Webb County; denied the City's motion for summary judgment; and declared the City's vote to purchase One River Place invalid and void.

### CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.[5]

---

5. We need not address the City's remaining contentions in light of our conclusion that the City violated TOMA by holding a closed session to discuss the purchase of One River Place.