Opinion issued February 14, 2008





     










In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00580-CV




CITY OF GALVESTON, TEXAS, BP ENERGY COMPANY, AND THE
BOARD OF TRUSTEES OF THE GALVESTON WHARVES,
Appellants/Cross-Appellees

V.

NANCY SAINT-PAUL, Appellee/Cross-Appellant




On Appeal from the 122nd Judicial District
Galveston County, Texas
Trial Court Cause No. 05CV0503


 


MEMORANDUM OPINION

          This appeal concerns whether three meetings that resulted in an option for a
lease for property on Pelican Island, which is owned by appellant, the City of
Galveston (“the City”), but controlled and managed by appellant, the Board of
Trustees of the Galveston Wharves (“the Board”), met the requirements of the Texas
Open Meetings Act (“the Act”). See Tex. Gov’t Code Ann. §§ 551.001–.146
(Vernon 2004 & Supp. 2007). After a bench trial, the trial court determined that (1)
the notice for the meeting by the Board to approve a Lease Option Agreement (“the
Option Agreement”) with BP Energy Company was inadequate under the Act because
it “did not provide sufficient information on the subject to be considered by the
governing body”; (2) the notice for the City’s meeting for the attornment


 of the lease
was also inadequate under the Act because it “did not provide sufficient information
on the subject to be considered by the City Council”; and (3) the notice for the
meeting by the Board to approve the Replacement Lease Option Agreement (“the
Replacement Agreement”) met the requirements of the Act, replaced the Option
Agreement, and was not a ratification of the Option Agreement.
          In a single issue, the Board asserts that the notice for the meeting at which it
agreed to the Option Agreement was adequate. In two issues, the City contends that
its notice for the Attornment Agreement meeting met the requirements of the Act and
that it should have been the prevailing party entitled to an award of attorney’s fees
under the Act.


 In four issues in the cross-appeal, appellee, Nancy Saint-Paul,
contends that the trial court erred (1) by finding valid the Replacement Agreement
because it merely ratified the Option Agreement that had been formed in violation of
the Act; (2) by refusing to hold the Option Agreement invalid on the grounds that it
violated the Texas Government Code as it did not involve competitive bidding and
it was a sale disguised as a lease; and (3) by sustaining the Board’s claim of the
attorney-client privilege for certain documents requested during discovery. 
          We conclude that the notice of the Board’s meeting to consider the
Replacement Agreement met the requirements of the Act and therefore affirm the trial
court’s determination that the Replacement Agreement was valid. We dismiss as
moot the Board’s sole issue, which asserts that the notice for its meeting regarding
the Option Agreement met the requirements of the Act, because the Option
Agreement was replaced by the Replacement Agreement. We also dismiss Saint-Paul’s challenges aimed at voiding the Option Agreement for the Board’s failure to
comply with the bidding requirements because she lacks standing to make that
complaint. We reverse the portion of the trial court’s judgment in which it ruled that
the notice for the City’s Attornment Agreement meeting did not meet the
requirements of the Act, and we remand to the trial court to consider the City’s
request for attorney’s fees. We also do not reach Saint-Paul’s evidentiary challenge,
which is contingent on a remand of the Board’s appeal.
Background
          The City set aside its wharf and terminal properties as a separate city utility
known as the Galveston Wharves. The Galveston Wharves and the “income and
revenue therefrom” are “fully managed, controlled, maintained and operated by a
Board of Trustees.” Although the City retains ownership of the property, the Board
has the powers of “fixing of charges, the authorization of expenditures, the
acquisition of properties, the determination of policies, and, in general, the complete
management and control of the Galveston Wharves and the income and revenue
thereof.”
          The Board, created in 1940 by the City, consists of seven members and has
regularly scheduled meetings once a month. It takes four members to constitute a
quorum. To carry out its day to day business, the Galveston Wharves has a full time
staff led by the Port Director, Steve Cernak.
          As early as 2002, Cernak began discussions with BP about a possible lease of
a site for BP to construct and operate a liquefied natural gas terminal. In May 2003,
two representatives from BP met with three members of the Board. The meeting was
held over lunch in a restaurant. The participants in this meeting described the
discussion as a “get-to-know-you meeting,” where the BP representatives provided
a general description of the proposed project. In April 2004, Cernak signed a Letter
of Option Intent that set forth the initial business terms concerning a lease option
agreement that included a confidentiality provision that prohibited disclosure of the
existence of the negotiations or subject matter. Through the summer of 2004, BP’s
counsel worked with Hulse Wagner, counsel for the Galveston Wharves, to prepare
a proposed agreement that would require approval by the Board.
          The Board’s meeting to discuss the Option Agreement occurred on September
20, 2004. The notice for that meeting was posted in public on September 16, four
days before the meeting. The notice stated that the meeting was to “Discuss and
Consider Approval of Option Agreement for the Lease of Approximately 185 Acres
of Land on Pelican Island.” After the meeting was convened, the Board met in an
executive session, which is closed to the public, to discuss the lease. During the
executive session, the Board desired changes to the proposed agreement. Cernak left
the room to call a BP representative to discuss whether BP would accept the proposed
changes and BP agreed to the changes. The Board adjourned its executive session,
but immediately reconvened in an open meeting, where it approved the agreement. 
The terms of the Option Agreement gave BP a three-year option to enter a lease on
a 185 acre tract on Pelican Island to allow BP to construct a liquefied natural gas
import terminal or for other “energy-related purposes.” The underlying lease has a
35-year term, with two 15 year extensions. 
          Although Pelican Island is managed by the Board, it is owned by the City,
which therefore also had to approve the lease through an attornment agreement. The
City’s meeting to discuss the Attornment Agreement was on September 23, 2004. 
The Attornment Agreement provided that the City would assume the rights and
obligations of the Board under the lease if the Board ever ceased to be the lessor of
the property. The notice for that City Council’s meeting stated,
Consider for action approving an agreement to execute an Attornment
Agreement between the City of Galveston, the Port of Galveston, and
BP Energy company relating to a Lease Agreement by and between the
Board of Trustees of the Galveston Wharves and BP Energy Company
for approximately 185.134 acres located on Pelican Island.

The City agreed to the Attornment Agreement at that meeting. 
          At about the same time as the City’s meeting, media attention surrounded the
topic of the lease of the land on Pelican Island. In a six month period of time
beginning on September 21, 2004, the Galveston Daily News published multiple
articles regarding the proposed liquefied natural gas project. The Houston Chronicle
also published articles. Advertisements supporting and opposing the project were
published by BP and groups opposed to the project, respectively. To inform the
public about the proposed project, BP representatives also made presentations to
community groups and neighborhood associations and held two open houses. On its
website, BP also provided information about the project.
          About five months after the Board agreed to the Option Agreement, it had a
meeting on February 28, 2005 to discuss an agreement to replace the Option
Agreement. The highly detailed notice for that meeting undisputedly complied with
the Act. At the meeting, the Board approved the Replacement Agreement, which was
intended to supercede and replace the Option Agreement, although the underlying
lease remained the same. The Board wanted to replace the Option Agreement with
the Replacement Agreement so that an additional matter could be added into the
agreement. The Board, which had received some criticism about the notice for the
meeting where it entered into the Option Agreement, also wanted to respond to the
criticism by holding another meeting about the lease with a more detailed notice
about the topic. After the Board voted to approve the Replacement Agreement, Saint-Paul filed suit to challenge the actions by the Board and the City. 
Saint-Paul’s Cross-Appeal
          In four issues, Saint-Paul challenges the trial court’s rulings that did not void
the Replacement Agreement or the Option Agreement and that allowed the Board to
exclude discovery by its claim of the attorney-client privilege.
A.      The Replacement Agreement
          In her first issue, Saint-Paul contends that the trial court erred by not voiding
the Replacement Agreement because the vote to accept the Replacement Agreement
is an illegal ratification of the Board’s prior void action approving the Option
Agreement.


 Specifically, Saint-Paul asserts that the essential terms of the
Replacement Agreement are the same as the Option Agreement, in that the rentals,
base terms, and extension terms are the same. She contends that the Option
Agreement was “tainted irretrievably by the fact that the agreement was reached in
a closed session pursuant to an ineffective notice.” She points to Cernak’s actions in
leaving the closed meeting and then returning to the meeting after speaking to the BP
representative as violations of the requirement that votes be conducted in open
meetings. Further, she points to evidence that she claims shows that the Board “‘cut’
their deal with BP at or before the closed session.”


 
          The Board responds that the Replacement Agreement was valid because a
governmental entity that has violated the Act may subsequently take the same action
as long as the subsequent action complies with the Act’s provisions and the
subsequent action does not have retroactive effect. The Board also asserts that the
record does not contain any evidence that the Board violated the Act in its notice for
the meeting where it agreed to the Option Agreement.
          The purpose of the Act is to ensure that citizens have the opportunity to
observe governmental decision making. Cox Enters., Inc. v. Bd. of Trs., 706 S.W.2d
956, 960 (Tex. 1986). The Act uses two principal mechanisms to accomplish this. 
First, subject to specified exceptions, the Act requires that meetings of a quorum of
a government body be open to the public. Tex. Gov’t Code Ann. § 551.002 (Vernon
2006). Second, the Act entitles the public to receive advance notice of the subjects
to be discussed at an open meeting so that citizens can decide if they want to observe
the meeting. See id. at § 551.041. The Act ensures compliance with the public
meeting and advance notice requirements by making “voidable” any action taken by
a government body in violation of the Act. See id. at § 551.141. However, the Act
does not prevent governmental bodies from curing prior Act violations. See Fielding
v. Anderson, 911 S.W.2d 858, 864 (Tex. App.—Eastland 1995, writ denied); see also
Smith County v. Thornton, 726 S.W.2d 2, 3 (Tex. 1986) (noting that original action
that was voidable for lack of adequate notice can be authorized by later action by
governmental body that complies with Act). An action taken in violation of the Act
cannot be ratified to have retroactive effect, but the governmental body may
reconsider and re-authorize an action. Burks v. Yarbrough, 157 S.W.3d 876, 883
(Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing Markowski v. City of Marlin,
940 S.W.2d 720, 726 (Tex. App.—Waco 1997 pet. denied)); see also Fielding, 911
S.W.2d at 864–65 (holding that governmental body may re-authorize action taken at
prior meeting that did not comply with Act because otherwise “once a governmental
body has done a void act, the situation could never be corrected”).
          Saint-Paul correctly notes that the Replacement Agreement is similar to the
Option Agreement in that they both terminate on the same day, have the same
underlying lease, and rely on the same consideration by BP since BP paid no new
consideration under the Replacement Agreement. Although the agreements share
similarities, we agree with the trial court’s determination that the Replacement
Agreement was not merely a ratification of an earlier void act. The Replacement
Agreement differed from the Option Agreement by including a term not in the Option
Agreement, namely that BP would reimburse the Galveston Wharves for the cost of
constructing a road to access the property. The Board gave a highly detailed notice
for the meeting where it agreed to the Replacement Agreement and there is no dispute
that the highly detailed notice satisfied the requisites of the Act.


 By its express
terms, the Replacement Agreement supersedes and replaces the Option Agreement. 
We conclude that the trial court did not err by determining that the Board’s
Replacement Agreement did not merely ratify the Option Agreement. See Burks, 157
S.W.3d at 883 (“Even assuming the Commissioners Court somehow held an unlawful
meeting by signing the new check, any impropriety was corrected when the
Commissioners Court, at Burks’s request, subsequently reconsidered the issue and
again approved payment.”). 
          Saint Paul cites to Esperanza Peace and Justice Ctr. v. City of San Antonio,
316 F.Supp.2d 433 (W.D. Tex. 2001) and Dallas County Flood Control Dist. No. 1
v. Cross, 815 S.W.2d 271, 283–84 (Tex. App.—Dallas 1991, writ denied), which hold
that actions committed in violation of the Act can later be re-taken at a subsequent
properly convened meeting, but determining that the Act was violated by facts that
showed that the subsequent meeting merely ratified action taken at an earlier
improper meeting. See Esperanza, 316 F.Supp.2d at 442 (determining Act was
violated by facts that showed mayor and members of city council met in closed
session, during which they approved budget through consensus memorandum that
they signed and holding that subsequent open meeting when council reconvened next
day did not satisfy Act because members had already signed their approval of
consensus-memorandum-budget that eliminated funding for plaintiff’s organization
prior to open meeting and no new discussion on budget occurred); Cross, 815 S.W.2d
at 283–84 (determining that Act was violated by facts that showed that sale of
property at closed meeting violated Act and that subsequent open meeting approving
of sale was also in violation of Act because sale had been completed, consideration
paid, and deed delivered before occurrence of open meeting; holding that subsequent
meeting merely improperly ratified earlier sale). Assuming that Saint-Paul is correct
that the Board violated the Act by reaching the agreement with BP before the meeting
at which the Board agreed to the Option Agreement, an allegation that the trial court
found she failed to prove, the facts are distinguishable from Esperanza and Cross. 
See Esperanza, 316 F.Supp.2d at 442; Cross, 815 S.W.2d at 283–84. Unlike
Esperanza and Cross, the Replacement Agreement does not merely ratify the Option
Agreement, but it instead supercedes that agreement and changes it by adding another
term. See Esperanza, 316 F.Supp.2d at 442; Cross, 815 S.W.2d at 283–84. The trial
court’s determination that the Replacement Agreement did not merely ratify the
Option Agreement is also supported by facts that demonstrate that, in response to
criticism about the notice for the meeting where it agreed to the Option Agreement,
the Board desired to reconsider the matter after it posted a sufficiently detailed notice
of the topic for consideration. We hold that the Board did not violate the Act by
meeting to discuss and approve the Replacement Agreement. We overrule Saint-Paul’s first issue.
B.      The Option Agreement
          In her second and third issues, Saint-Paul contends that the proposed lease to
BP is illegal and cannot be enforced because it was not the result of the bidding
requirement in Local Government Code section 272.001 that applies to the sale of
public land, which she claims applies here for this “sale disguised as a lease.”


 Saint-Paul presents one joint argument under these two issues relating to whether the lease
was in fact a sale. We therefore treat these issues together. The Board asserts that
Saint-Paul does not have standing to contest the invalidity of the lease to BP. BP
similarly asserts that Saint-Paul does not have standing to bring her suit because she
cannot show a particularized injury, distinct from other members of the public.
          Standing implicates a court’s subject matter jurisdiction. Patterson v. Planned
Parenthood of Houston, 971 S.W.2d 439, 442–43 (Tex. 1998). Standing is a
component of subject-matter jurisdiction, cannot be waived, and is essential to a
court’s power to decide a case. Williams v. Lara, 52 S.W.3d 171, 178 (Tex. 2000);
Bland Indep. School Dist. v. Blue, 34 S.W.3d 547, 553–54 (Tex. 2000). Unless a
particular statute conveys standing, a plaintiff who sues to challenge governmental
decision-making must demonstrate that she has an interest in a conflict separate from
that of the general public and that the defendant’s actions have caused the plaintiff
some particular injury. Williams, 52 S.W.3d at 178–79; Bland Indep. School Dist, 34
S.W.3d at 555–56.
          To show standing under section 272.001, a plaintiff must show “a particular
personal interest that was harmed by the alleged defect” in a disposition of public
property. Bell v. Katy Indep. Sch. Dist., 994 S.W.2d 862, 866 (Tex. App.—Houston
[1st Dist.] 1999, no pet.). Saint-Paul offered no evidence, nor does she claim, that she
would have submitted a bid to purchase the property had a competitive bid process
existed. She therefore lacks standing to assert a cause of action under section
272.001. See id. (holding that plaintiffs lacked standing where they did not contend
that deficiency in notice under section 272.001 caused them to lose opportunity to bid
on property or that they had interest in attempting to purchase property). Because we
lack subject-matter jurisdiction, we dismiss Saint-Paul’s second and third issues.
C.      Evidentiary Ruling
          In her fourth issue, Saint-Paul contends that the trial court erred by “sustaining
the [Board’s] plea of attorney-client privilege as to certain documents which had been
released in discovery, and then recalled by the [Board].” Saint-Paul specifically
points to Exhibit 48, which is an email dated February 13, 2004 from the Board’s
attorney Wagner to Cernak. According to Saint’s Paul’s brief, the exhibit “is a sealed
copy of a document which proves that the [Board] and their counsel knew at the
outset that the course they eventually pursued as illegal.” The Board responds that
the trial court did not err because the documents in question are protected by the
attorney-client privilege. 
          Saint-Paul’s fourth issue is contingent on remand. In her prayer, Saint-Paul
states, “Cross Appellant conditionally prays that in the event of remand, the Court of
Appeals reverse the trial Court’s holding as to PX-48 (Ground 4).” Although we are
remanding to the trial court for consideration of attorney’s fees to the City, we are not
remanding any part of the appeal concerning the Board, which is the entity to which
this exhibit pertains. We therefore do not reach Saint-Paul’s fourth issue. 
Appeal by the Board
          In its sole issue, the Board asserts that the trial court erred by finding that the
notice was inadequate under the Act for the meeting that resulted in the Board’s
approval of the Option Agreement. In its appeal, the Board prays for reversal of the
declaration that the notice was inadequate, but it does not affirmatively ask for
rendition or remand, nor does it raise the issue of attorney’s fees. Having upheld the
trial court’s determination that the Replacement Agreement properly replaced and
superseded the Option Agreement, the matter of whether the Board’s notice 
concerning the meeting where it agreed to the Option Agreement is not a live
controversy because the Option Agreement is no longer in effect. Because the Option
Agreement is no longer in effect, any decision we might make will not affect the
parties rights. See Pinnacle Gas Treating, Inc. v. Read, 104 S.W.3d 544, 545 (Tex.
2003) (noting that case is moot if court’s actions cannot affect parties’ rights).
Therefore, any opinion on the adequacy of notice for the meeting that resulted in the
Option Agreement would be impermissibly advisory. See Valley Baptist Med. Ctr.
v. Gonzalez, 33 S.W.3d 821, 822 (Tex. 2000) (ruling on moot controversy constitutes
impermissible advisory opinion). We dismiss the Board’s appeal as moot. 
Appeal by the City
          In two issues, the City challenges the trial court’s determination that the notice
for the Attornment Agreement meeting was inadequate and the trial court’s failure to
consider the City as the prevailing party for purposes of awarding attorney’s fees. In
its findings of fact, the trial court concluded that the City’s “Notice of the subject
matter (attornment agreement) of the 9/23/2004 workshop and council meetings was
insufficient and violated [the Act].” 
A.      Sufficiency of the City’s Notice
          In its first issue, the City contends that the trial court erred by concluding that
the notice did not meet the requirements of the Act because the notice fairly advised
the “reader of the subject or topic for the governing body’s consideration.” The City
contends that the notice satisfied the requirements of the Act by identifying the
parties to the agreement and the type of agreement at issue, as well as the statement
that it relates to an underlying lease between the Galveston Wharves and BP. Saint-Paul replies that the trial court correctly concluded that the notice was not adequate
because it did not mention the purpose of the underlying lease, which was a liquefied
natural gas facility, or the length of the term of the lease, which indicates that the
transaction was in reality a sale disguised as a lease. 
          The Act provides, “A governmental body shall give written notice of the date,
hour, place, and subject of each meeting held by the governmental body.” Tex.
Gov’t Code Ann. § 551.041 (Vernon 2004). When the contents of the notice are
undisputed, as here, the sufficiency of the notice becomes a question of law that we
review de novo. Burks, 157 S.W.3d at 883. “As long as a reader is alerted to the
topic for consideration, it is not necessary to state all of the consequences which may
flow from consideration of the topic.” Cox Enters., 706 S.W.2d at 958. “Even if a
notice is not as clear as it could be, it is adequate as long as it is sufficiently
descriptive to alert a reader that a particular subject will be addressed.” Burks, 157
S.W.3d at 883. However, the greater the public interest in the matter to be discussed,
the more specific the notice must be. Cox Enters., 706 S.W.2d at 959; City of Laredo
v. Escamilla, 219 S.W.3d 14, 19 (Tex. App.—San Antonio 2006, pet. denied) (citing
Markowski, 940 S.W.2d at 726). “The focus of our analysis is a comparison between
the content of the notice given and the action taken at the meeting.” Rettberg v. Tex.
Dep’t of Health, 873 S.W.2d 408, 412 (Tex. App.—Austin 1994, no writ); see also
Odessa Tex. Sheriff’s Posse, Inc. v. Ector County, 215 S.W.3d 458, 473 (Tex.
App.—Eastland 2006, pet. denied); Markowski, 940 S.W.2d at 726.
          The action taken at the meeting was that the City entered into an “Agreement
Regarding Attornment Agreement.” The Agreement contained two exhibits: the
proposed lease between BP and Galveston Wharves and a proposed attornment
agreement between BP and the City. The Agreement provided that if BP entered into
a lease with the Galveston Wharves “in substantially the form attached hereto” then
the City would “enter into the Attornment Agreement in substantially the form
attached hereto.” 
          The notice for that City Council’s meeting states,
Consider for action approving an agreement to execute an Attornment
Agreement between the City of Galveston, the Port of Galveston, and
BP Energy company relating to a Lease Agreement by and between the
Board of Trustees of the Galveston Wharves and BP Energy Company
for approximately 185.134 acres located on Pelican Island.
          The City’s notice specifically discloses (1) the parties to the proposed
agreement, namely, the City, the Port of Galveston, and BP; (2) the type of proposed
agreement, namely, an attornment agreement; (3) the subject of the underlying
agreement to be attorned, namely, a lease agreement; (4) the parties to the underlying
lease agreement, who are identified as the Board and BP; and (5) the location and size
of the property that is identified as 185.134 acres located on Pelican Island. The
notice stated that the City would consider approving an “agreement to execute an
Attornment Agreement,” which is what the City did. The notice further identified
that the Attornment Agreement related to a lease between BP and the Galveston
Wharves, which is the action taken at the meeting. We hold that the notice in this
case is specific enough to notify a reader of the subject of the City’s meeting. See
Rettberg, 873 S.W.2d at 412. We sustain the City’s first issue. 
B.      Attorney’s fees
          In its second issue, the City contends that “[b]ecause the district court erred in
failing to dismiss with prejudice all of St. Paul’s claims, the court correspondingly
erred in failing to regard the City as a prevailing party for the purpose of determining
whether the City is entitled to an award of attorneys’ fees under” the Act.
          Section 551.142 of the Government Code provides that a prevailing party in
a Texas Open Meetings Act suit may recover its fees and costs. Tex. Gov’t Code
Ann. § 551.142 (Vernon 2004). Whether to make an award of fees and costs under
the Act falls within the trial court’s sound discretion. Bell, 994 S.W.2d at 867. Here,
the trial court granted the relief sought by Saint-Paul against the City, but ordered that
each party bear its own attorney’s fees and costs. Because we have reversed the trial
court’s judgment concerning the Act as against the City, we remand for the trial court
to exercise its discretion whether to award attorney’s fees to the City. See Odessa
Tex. Sheriff’s Posse, 215 S.W.3d at 474 (remanding for attorney’s fees issue when
trial court did not have chance to exercise its discretion under Act); Moosavideen v.
Garrett, No. 01-06-00002-CV, 2007 WL 2130566, at *8 (Tex. App.—Houston [1st
Dist.] July 26, 2007, no pet. h.) (remanding to trial court to reconsider attorney’s fees
issue when trial court’s declaratory judgment was reversed). We sustain the City’s
second issue.
Conclusion
          We affirm the trial court’s judgment concerning the Board’s adoption of the
Replacement Agreement. We dismiss Saint-Paul’s appeal concerning the lack of
bidding because she lacks standing to assert that claim. We dismiss the appeal by the
Board because the issue is moot. We do not reach the discovery challenge by Saint-Paul. We reverse the trial court’s declaration that the City’s notice was inadequate
and hold that it was adequate to meet the requirements of the Texas Open Meetings
Act. We remand this cause for the trial court to consider the City’s request for
attorney’s fees under the Texas Open Meetings Act.
 

                                                             Elsa Alcala
                                                             Justice

Panel consists of Chief Justice Radack and Justices Jennings and Alcala.