Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# OPINION

No. 04-11-00034-CV

Bethel **STANDLEY**,
Appellant

v.

W.B. **SANSOM**, County Judge; Manuel Rubio, Wade Reagor, Castulo San Miguel, and Joe W.
Connell, in their Official Capacities as County Commissioners of Real County; and Jim Wilson,
Appointed Constable,
Appellees

From the 38th Judicial District Court, Real County, Texas
Trial Court No. 2008-2819-DC
Honorable Stephen B. Ables, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Phylis J. Speedlin, Justice
Rebecca Simmons, Justice

Delivered and Filed:  March 7, 2012

AFFIRMED

Former Real County constable Bethel Standley, appellant, sued the county judge, W.B.

Sansom, and other county officials, (hereinafter referred to as "the county,") for trespass to try

title to the office of constable, and for salary and benefits of the office of constable. Standley also

sued for violations of the Texas Open Meetings Act. A jury found Standley had automatically

resigned from the office of constable, and the trial court rendered judgment that Standley take-

nothing. On appeal, Standley complains about the trial court's refusal to give certain instructions and definitions to the jury, and the sufficiency of the evidence to support the verdict. Standley also complains about the summary judgment rulings on his Texas Open Meetings Act claims. We affirm the trial court's judgment.

## BACKGROUND

Article XVI, section 65(b) of the Texas Constitution, which applies to the office of constable, provides:

> If any of the officers named herein *shall announce their candidacy, or shall in fact become a candidate*, in any General, Special or Primary Election, for any office of profit or trust under the laws of this State or the United States other than the office then held, *at any time when the unexpired term of the office then held shall exceed one (1) year, such announcement or such candidacy shall constitute an automatic resignation of the office then held*, and the vacancy thereby created shall be filled pursuant to law in the same manner as other vacancies for such office are filled.

TEX. CONST. art. XVI, § 65(b) (emphasis added).[1]

In late 2007, while he still had more than one year to serve on his term as constable, Standley decided to run for Real County sheriff. The county concluded Standley had automatically resigned from the office of constable under article XVI, § 65(b) of the Texas Constitution, commonly known as the "resign to run" provision. In April 2008, the county met in a closed session meeting and appointed a replacement for Standley.

In October 2008, Standley filed the underlying lawsuit, alleging he did not automatically resign from the office of constable under article XVI, section 65(b) of the Texas Constitution. In addition, Standley alleged the county violated the announcement requirements of the Texas Open

---

[1]In 2011, Article XVI, section 65(b) was amended. As amended, article XVI, section 65(b) provides "at any time when the unexpired term of the office then held shall exceed *one year and 30 days*, such announcement or such candidacy shall constitute an automatic resignation of the office then held . . . ." TEX. CONST. ANN. art. XVI, § 65(b) (West 2012) (emphasis added).

Meetings Act when it met in closed meetings in January 2008 and April 2008 and discussed the appointment of a replacement for Standley. The parties filed cross-motions for summary judgment on the Texas Open Meetings Act claims. Concluding the county did not violate the Texas Open Meetings Act, the trial court granted the county's summary judgment motion, and denied Standley's summary judgment motion.

The issue of Standley's automatic resignation was tried to a jury. At trial, the evidence showed the following. Standley stipulated he told a dozen people in the county that he was running for sheriff while more than one year remained on his unexpired term. Many of the conversations took place in public settings. The conversations were not confidential. One of the people Standley told he was running for sheriff was the editor of the local newspaper. Standley's conversation with the newspaper editor was "on the record." In addition, Standley completed a primary ballot application for the office of sheriff and wrote a check for the filing fee, and delivered these items to the party chairman while more than one year remained in his unexpired term.

In question number one of the charge, the jury was asked, "Did Bethel Standley announce his candidacy for Real County Sheriff prior to January 1, 2008?" In question number two of the charge, the jury was asked, "Did Bethel Standley in fact become a candidate in the election for Real County Sheriff prior to January 1, 2008?" The jury answered "yes" to both questions. In accordance with the jury's verdict, the trial court rendered judgment that Standley take nothing.

Thereafter, Standley filed a motion for judgment notwithstanding the verdict and a motion for new trial. Both motions were denied. This appeal ensued.

## DISCUSSION

Article XVI, section 65(b) of the Texas Constitution establishes two grounds for automatic resignation: (1) announcing candidacy, and (2) in fact becoming a candidate. *See id*. In this case, the jury found both grounds for automatic resignation, and the trial court's judgment is based on both of these findings. Thus, if we uphold either ground, we must affirm the judgment.

On appeal, Standley raises complaints as to both grounds; however, we find it necessary to address only Standley's complaints about whether he announced his candidacy. *See* TEX. R. APP. P. 47.1 (requiring appellate court opinions to be as brief as practicable while addressing every issue raised and necessary to final disposition of the appeal).

### *Jury Instructions and Definitions*

Standley complains the trial judge erred in instructing the jury that the county was required to prove he automatically resigned by a preponderance of the evidence, rather than by clear and convincing evidence. Standley further complains the trial court erred in not defining the word "announce" in the charge. In support of this argument, Standley points to the fact that the jury sent a note asking for a dictionary so it could obtain a definition of the term "announce."[2]

#### *1. Refusal of Instruction on Standard of Proof*

As a preliminary matter, the county argues Standley waived this complaint because he did not object to the portion of the charge instructing the jury on the preponderance of the

---

[2]Standley also complains the trial court erred in refusing his jury instruction defining the phrase "in fact become a candidate." As previously stated, we need not reach this complaint.

evidence standard. We disagree. In *State Dep't of Highways & Pub. Transp. v. Payne*, the Texas Supreme Court stated,

> There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling. The more specific requirements of the rules should be applied, while they remain, to serve rather than defeat this principle. In this case, the State clearly met this test.

838 S.W.2d 235 (Tex. 1992).

Here, the record demonstrates the trial court was made aware of Standley's precise complaint—that he wanted the jury instructed to apply the clear and convincing standard of proof rather than the preponderance of the evidence standard of proof—and made a ruling on it. At the charge conference, the trial court first asked the county if it had any objections to the proposed charge. The county made an objection which was overruled by the trial court. The trial court then stated, "I've been presented by Plaintiff's Counsel a proposed instruction on using clear and convincing evidence *instead of preponderance of the evidence*, and I'm going to reject that request, and I have signed that rejection and placed it in the file." (emphasis added). Thus, the trial judge understood that Standley was objecting to the preponderance of the evidence instruction in the charge, and ruled on this complaint. We hold Standley's complaint about the proper standard of proof is preserved for appellate review.

As to the merits, Standley argues the trial court erred in instructing the jury that the standard of proof was preponderance of the evidence, rather than clear and convincing evidence. No Texas court has ever held that the standard of proof in an action involving article XVI, section 65(b) of the Texas Constitution is clear and convincing evidence.

The clear and convincing evidence standard of proof has been held to apply in limited situations, including punitive damage awards, actual malice, public-figure defamation cases,

termination of parental rights, and civil involuntary commitments. *See* W. Wendell Hall, *Standards of Review in Texas*, 38 ST. MARY'S LAW JOURNAL 47, 288 (2006). However, in the vast majority of situations, the preponderance of the evidence standard applies. "[N]o doctrine is more firmly established than that issues of fact are resolved from a preponderance of the evidence." *Ellis Cnty. State Bank v. Keever*, 888 S.W.2d 790, 792 (Tex. 1994) (quoting *Sanders v. Harder*, 227 S.W.2d 206, 209 (1950)). "Only in extraordinary circumstances, such as when we have been mandated to impose a more onerous burden, has this Court abandoned the well established preponderance of the evidence standard." *Id*. (rejecting the application of the clear and convincing evidence standard in a malicious prosecution action).

To support his argument that the trial court erred in instructing the jury on the preponderance of evidence standard of proof, Standley relies on *Wentworth v. Meyer*, 839 S.W.2d 766, 768 (Tex. 1992). In *Wentworth*, the Texas Supreme Court interpreted another constitutional provision, article III, section 19, which provided that any person holding state office was not eligible to run for the state legislature during the term for which he was elected or appointed. At issue in *Wentworth* was the meaning of the word "term." In construing article III, section 19, the Supreme Court considered the purpose of the provision in light of the principle that constitutional provisions which restrict the right to hold public office should be strictly construed against ineligibility. *See id*. at 767-69. Thus, *Wentworth* had nothing to do with jury instructions on the standard of proof; instead, it involved the interpretation of an ambiguous constitutional provision. *See id*.

Nevertheless, based on *Wentworth*, Standley argues the clear and convincing evidence standard of proof was required in this case. Standley argues "one way to incorporate the *Wentworth* principle"—"to strictly construe the automatic resignation rule . . . to favor non-

resignation whenever possible"—"would be to require that proof of resignation meet the intermediate standard of proof of 'clear and convincing evidence.'" We are not persuaded by these arguments. Principles of constitutional construction and standards of proof are distinct concepts that serve different functions. Nothing in *Wentworth* requires the use of the clear and convincing standard of proof when, as here, a fact finder is evaluating whether an official automatically resigned from office. Moreover, Standley's analysis omits any discussion of the purpose of article XVI, section 65(b), which is to ensure that officeholders give their undivided attention to the duties of their current office during most of their term, instead of campaigning while in the middle of the term. *See* Texas Legislative Council, *Analysis of Proposed Constitutional Amendments, November 8, 2011, Election*, 59 (2011); *see also* TEX. ATTY. GEN. OP. NOS. DM-377 (1996); WW-788 (1960).

We hold the proper standard of proof in this case was the preponderance of the evidence. Thus, the trial court did not err in refusing to instruct the jury on the clear and convincing evidence standard of proof.

### 2. *Refusal of Instruction Defining "Announce"*

Next, the county argues Standley waived his complaint about the trial court's failure to provide the jury an instruction defining "announce" as used in article XVI, section 65(b). Standley did not complain about the absence of such a definition in the jury charge; however, he did complain when the trial court refused to provide such a definition in a supplemental instruction. During deliberations, the jury wrote a note asking for a dictionary so it could look up the definition of "announce." The trial court informed counsel it planned to deny the jury's request for a dictionary. Standley's counsel then objected stating,

> [I]n order to preserve error here, Your Honor, I would propose that they be given
> a Black Law[] dictionary definition of the word 'announce,' being to formally

proclaim . . . . I would reurge that they be given the Black's Law dictionary [definition] of announce because if that word is in there, perhaps it's a legal term, and [] perhaps we would be obligated to explain legal terms to them or terms that wouldn't necessarily be used in a common way.

In response to further questioning from the trial court, Standley's counsel explained that he did not have any authority for his position that the jury should be given the Black's Law definition of "announce" other than attorney general opinions indicating the word "announce" has a legal meaning in the context of article XVI, section 65(b) of the constitution.

To the extent Standley complains the trial court's failure to define "announce" in the jury charge, we conclude he has not preserved his complaint for appellate review. However, under Rule 286 of the Texas Rules of Civil Procedure, the trial court was authorized to give the jury further instructions. TEX. R. CIV. P. 286. Thus, to the extent Standley complains the trial court's failure to provide a supplemental instruction defining the term "announce" in response to the jury's note, we conclude Standley has preserved his complaint for appellate review.

The trial court has considerable discretion in submitting instructions and definitions. *First State Bank and Trust Co. v. George*, 519 S.W.2d 198, 207 (Tex. Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.). Thus, we review the trial court's decision for an abuse of discretion. *Green Tree Acceptance, Inc. v. Combs*, 745 S.W.2d 87, 89 (Tex. App.—San Antonio 1988, writ denied).

"The court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX. R. CIV. P. 277. "At a minimum, a jury charge must define those words and other technical phrases that have distinct legal meanings." *Barnett v. Coppell N. Texas Court, Ltd.*, 123 S.W.3d 804, 826 (Tex. App.—Dallas 2003, pet. denied) (stating the term "release" has a distinct legal meaning). Thus, definitions are given to enable jurors to understand legal words or phrases used so that they may properly answer the issues and render a verdict in

the case. *Houston Nat'l Bank v. Biber*, 613 S.W.2d 771, 775-76 (Tex. Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). However, words of ordinary meaning, readily understandable by the average person, need not be defined in the charge. *Allen v. Allen*, 966 S.W.2d 658, 660 (Tex. App.—San Antonio 1998, pet. denied) (holding the trial court improperly defined the word "cohabitation" in the jury charge). Thus, definitions are provided when words or phrases are given a distinctive meaning by law. *Id.*

Standley argues the word "announce" as used in section XVI, article 65(b) has a distinct legal meaning because it is found in Black's Law Dictionary. This argument is undermined, however, by the fact that the definition found in Black's Law Dictionary is virtually the same as the definition found in Webster's Dictionary. According to Black's Law Dictionary, "announce" means, "to make publicly known; to proclaim formally." BLACK'S LAW DICTIONARY 98 (8th ed. 2004). According to Webster's Dictionary, "announce" means "to make known publicly: proclaim." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 87 (1991).

Standley further argues the attorney general opinions show the word "announce" as used in article XVI, section 65(b) has a distinct legal meaning. According to Standley, the attorney general "has consistently ruled that a person 'announces' not when a statement is made to a news reporter, but when it is published, *i.e.*, when it is 'made known publicly.'" Standley goes on to argue the attorney general opinions demonstrate that the meaning of "announce" does not turn "on whether the public official told someone he was running for another office, but [on] whether there was publicity about such a statement, or at least that the person was attempting to get such publicity."

We find these arguments unconvincing. First, attorney general opinions are persuasive; they are not controlling authority. *Holmes v. Morales*, 924 S.W.2d 920, 924 (Tex. 1996). Thus,

even if the attorney general opinions established that "announce" has a distinct legal meaning in this context, they would not be binding on this court. Second, we do not construe the attorney general opinions as standing for the proposition that "announce" has a distinct legal meaning. In fact, some attorney general opinions cite to non-legal dictionary definitions in discussing the meaning of "announce." *See*, *e.g.*, TEX. ATTY GEN. OP. NOS. GA-0769 (2010); GA-0643 (2008); GA-0210 (2004). Moreover, the attorney general opinions are necessarily limited to the particular facts and circumstances presented in each case. *See* TEX. ATTY GEN. OP. NOS. GA-0210 (2004) (concluding a factfinder could reasonably conclude the officeholder's private conversation with a reporter that did not result in the publication of information about his candidacy did not constitute an announcement of candidacy); DM-377 (1996) (concluding candidacy was announced when officeholder made a statement at a commissioner's court meeting that he was "at the moment" a candidate for another office); WW-1253 (1962) (concluding candidacy was announced when the officeholder issued a press release and an article was published in the newspaper).

We hold the word "announce" as used in article XVI, section 65(b) of the Texas Constitution has no distinct legal meaning. We further hold that the word "announce" as used in question one of the jury charge in this case had its ordinary meaning and was readily understandable by the average person. We conclude the trial court did not abuse its discretion by refusing to give the jury a supplemental instruction defining "announce."

### *Sufficiency of the Evidence*

Next, Standley complains the evidence was legally and factually insufficient to support the jury's finding that he announced his candidacy before January 1, 2008.[3] Once again, the

---

[3]Standley also complains the evidence was legally and factually insufficient to support the jury's finding that he in fact became a candidate before January 1, 2008. Again, we need not address this complaint.

county argues Standley waived his legal and factual sufficiency complaints by not raising them in the trial court.

To preserve error for a legal sufficiency issue as to a jury trial, the appellant must raise the issue through one of the following: (1) a motion for directed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the question to the jury; (4) a motion to disregard the jury's answer to a vital fact question; or (5) a motion for new trial. *Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991). To complain on appeal about the factual sufficiency of the evidence in a jury trial, the party must present the specific complaint to the trial court in a motion for new trial. TEX. R. CIV. P. 324(b); *Cecil*, 804 S.W.2d at 510.

In his motion for judgment notwithstanding the verdict, Standley argued the evidence was legally insufficient to support the jury's finding that he announced his candidacy because the "record contains no evidence that [Standley] made a formal declaration of candidacy to the general public in a public setting prior to January 1, 2008." In his motion for new trial, Standley argued the jury's finding that he announced his candidacy was "against the great weight and preponderance of the evidence and [was] manifestly unjust." We conclude Standley has preserved his sufficiency complaints, and therefore, turn to the merits of Standley's arguments.

### 1. *Legal Sufficiency*

When reviewing the legal sufficiency of the evidence to support a jury finding, we consider all the evidence in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable jury could and disregarding contrary evidence unless a reasonable jury could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). If more than a scintilla of evidence supports the jury's finding, the legal sufficiency challenge will

fail. *See Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 48-49 (Tex. 1998).

Here, the jury found Standley announced his candidacy for sheriff prior to January 1, 2008. There was ample evidence to support this finding.

Standley testified he remembered telling about a dozen people he was a candidate for sheriff prior to January 1, 2008. Standley named the people he told he was a candidate prior to January 1, 2008, in written stipulations which were admitted into evidence.

In addition, several witnesses testified Standley approached them before January 1, 2008, and told them he was running for sheriff. Velva Escobedo, who was previously employed in the sheriff's office, testified Standley stopped her on the sidewalk outside the feed store in Leakey, Texas, in late October or early November 2007, and told her he was running for sheriff. Standley also told her he was planning to "clean house" when he became sheriff, and offered her a job running the sheriff's "front office." Escobedo testified Standley stated unequivocally that he was running for sheriff. Escobedo further testified she was told by two other people that Standley had offered them the same job.

Jesse Lee Scott testified he spoke with Standley about his race for sheriff on two separate occasions in December 2007. Both conversations took place in front of the post office in Leakey, Texas. The first conversation took place before Christmas. Standley stopped Scott, stated he was running for sheriff, and told him he needed support and votes. Scott told him he was not in a position to make a financial contribution to Standley's campaign because it was Christmastime and he had a lot of grandchildren. The second conversation took place sometime between Christmas and New Year's Eve. Scott asked Standley how his campaign for sheriff was going, and Standley asked Scott to tell his children that Standley needed their votes. Scott further

testified these conversations were not supposed to be confidential and could have been overheard by others.

Jimmy Wilson testified he went to William Earl "Dub" Edgar's real estate office in Leakey, Texas, during the first or second week in December 2007. According to Wilson, local residents frequently congregated at Edgar's office to visit. On this occasion, Standley stated he was running for sheriff and suggested that Wilson run for constable. Wilson testified Edgar was present when Standley made this statement, and other people may have been present as well. Wilson further testified that Standley's conversation with him was not private or confidential. Wilson described the office where the conversation took place as a place where people "come and go." On December 28, 2007, Wilson had another conversation with Standley. In this conversation, Standley confirmed he was running for sheriff rather than constable.

Penny Maguire, the editor of the local newspaper, "The Leakey Star," also testified. According to Maguire, her newspaper ran a story on December 14, 2007, stating Standley was still deciding whether to run for constable or sheriff. Thereafter, Maguire received reports from various sources that Standley had decided to run for sheriff. On December 27 or 28, 2007, Maguire placed a telephone call to Standley. In a telephone conversation, Standley stated he was definitely running for sheriff. The statement was made "on the record" and was not qualified in any way. Maguire also testified candidates frequently used the press to further their own publicity goals.

Wendell Burt Sansom Jr. testified that around December 22, 2007, he was asked by Edgar's wife, Faye, to support Standley in his race for sheriff. Sansom further testified that Edgar told him at a New Year's Eve party that Standley had filed as a candidate for sheriff. Edgar identified himself as Standley's campaign treasurer and friend. Edgar said he supported Standley

in his run for sheriff. Sansom testified that the conversation he had with Edgar was not private, and there were many people around when these statements about Standley's candidacy were made.

Standley asserts the evidence was legally insufficient because the jury heard no evidence that he made a public or formal proclamation of candidacy. Standley essentially asserts that evidence of an organized public or formal proclamation—something in the nature of a meeting or a press conference before a group—was required for the jury to find Standley announced his candidacy. We disagree. Here, the evidence showed Standley had numerous conversations in which he told various people he was definitely running for sheriff prior to January 1, 2008. These statements were not confidential and were made in public settings where Standley could have been overheard. Moreover, in at least one of these conversations, Standley not only asked for political and financial support, he asked that his candidacy for sheriff be publicized. Viewing the evidence in the light most favorable to the jury's finding, we hold the evidence was legally sufficient to support the jury's finding that Standley announced his candidacy for sheriff prior to January 1, 2008.

### 2. *Factual Sufficiency*

When reviewing the factual sufficiency of the evidence to support a jury finding, we consider all the evidence supporting and contradicting the finding. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

In addition to the previously detailed evidence supporting the jury's finding, the record also contains evidence contradicting the jury's finding. Several witnesses testified Standley had

no posters, billboards, cards, or ads concerning his candidacy for sheriff prior to January 1, 2008. Additionally, Maguire testified it was common knowledge that "The Leakey Star" was published every Friday. Maguire further testified that because of the newspaper's schedule, Standley would have known that any statements he made to her on December 27 or 28, 2007, would not be published until Friday, January 3, 2008.

Moreover, contrary to Sansom's testimony, William Earl Edgar Jr. testified he never solicited support for Standley's run for sheriff prior to January 1, 2008. Edgar further testified he did not learn Standley was definitely running for sheriff until January 2 or 3, 2008.

Finally, contrary to Scott's testimony, Standley testified he never asked Scott for a campaign contribution.

Considering all of the evidence supporting and contradicting the jury's finding, we cannot say the evidence was so weak or the finding was so against the great weight and preponderance of the evidence that it was clearly wrong and unjust. We, therefore, hold the evidence was factually sufficient to support the finding that Standley announced his candidacy for sheriff prior to January 1, 2008.

### Texas Open Meetings Act Claims

Finally, Standley complains the trial court erred in granting the county's motion for summary judgment on his Texas Open Meetings Act claims, and in denying his cross-motion for summary judgment on the same issue. We review the trial court's summary judgment rulings de novo. *Willmann v. City of San Antonio*, 123 S.W.3d 469, 472 (Tex. App.—San Antonio 2003, pet. denied).

Generally, meetings of governmental bodies must be open to the public. *See* TEX. GOV'T CODE ANN. § 551.002 (West 2004). Exceptions to the general rule are listed in Chapter 551,

Subchapter D, of the Texas Government Code. *See id.* §§ 551.071-.089 (West 2004 & Supp. 2011). One of these exceptions is that a governmental body is not required to conduct an open meeting to deliberate the appointment of a public officer. *See id.* § 551.074 (West 2004).

The purpose of the Texas Open Meetings Act is to enable public access to and to increase public knowledge of government decisionmaking. *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765 (Tex. 1991). To effectuate this purpose, the Texas Open Meetings Act requires advanced written notice of all meetings held by a governmental body. *See* TEX. GOV'T CODE ANN. § 551.041. In addition, the Texas Open Meetings Act requires the presiding officer to publicly announce the governmental body's intent to go into a closed meeting and identify the statutory basis for doing so. *See id.* § 551.101.[4] Chapter 551, Subchapter E, establishes the procedures related to a closed meeting. *See id.* §§ 551.101-.104.

In his lawsuit, Standley alleged the county failed to comply with section 551.101 of the Texas Government Code by not publicly announcing the section or section numbers authorizing its closed meetings on January 14, 2008, and April 14, 2008. The relief sought by Standley was the release of the tape recordings of the meetings and a permanent injunction governing future announcements. The parties filed cross-motions for summary judgment on the Texas Open Meetings Act claims. The undisputed summary judgment evidence showed the challenged announcements consisted of the county judge reading the written notices, which stated,

---

[4]Section 551.101 of the Texas Government Code provides,

> If a closed meeting is allowed under this chapter, a governmental body may not conduct the closed meeting unless a quorum of the governmental body first convenes in an open meeting for which notice has been given as provided by this chapter and during which the presiding officer publicly:
>
> > (1) announces that a closed meeting will be held; and
> >
> > (2) identifies the section or sections of this chapter under which the closed meeting is held.

TEX. GOV'T CODE ANN. § 551.101 (West 2004).

Discussion and/or approval of Appointment of Constable for Precinct Nos. 1 & 2; [EXECUTIVE SESSION IN ACCORDANCE WITH THE TEXAS OPEN MEETINGS ACT, TEXAS GOVERNMENT CODE, CHAPTER 551, SUBCHAPTERS D AND E].

Concluding the county did not violate the Texas Open Meetings Act, the trial court granted the county's summary judgment motion, and denied Standley's summary judgment motion.

In a similar situation, the Austin court of appeals held an announcement that identified the content of the exception was sufficient, even though it did not list the exception by its section number. *Lone Star Greyhound Park, Inc. v. Texas Racing Comm'n*, 863 S.W.2d 742, 747-48 (Tex. App.—Austin 1993, writ denied). In *Lone Star*, the presiding officer stated the purpose of the closed session was so that "legal staff" could brief the governmental body with respect to the agenda and "the Lone Star matter" "passed down from the [c]ourt" for review. *Id*. at 747. In upholding the announcement, the Austin court of appeals recognized the purposes of the announcement requirement, and analyzed the announcement in light of whether it effectuated or hindered these purposes. *Id*. at 747-48. The Austin court of appeals identified these purposes as: (1) causing the governmental body to actually assess the applicability of the exceptions before deciding to close the meeting; (2) fixing the governmental body's legal position as relying upon the exception specified; (3) informing those present at the meeting of that exception; and (4) giving those present an opportunity to object intelligently. *Id*. at 747.

Adhering to the reasoning of *Lone Star*, we conclude the announcements in this case were sufficient. The announcements identified the content of the closed meetings as the appointment of a constable. The appointment of an officeholder is one of the exceptions to the open meetings requirement found in subchapter D of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 551.074. The announcements in this case provided at least as much information about the content of the closed meetings as the announcement in *Lone Star*. The

announcements in this case also directed the public to subchapters D and E of Chapter 551 of the Texas Government Code. We conclude the announcements in this case effectuated the purposes of the announcement requirement. We hold the trial court's summary judgment rulings were proper.

## CONCLUSION

The judgment of the trial court is affirmed.

Karen Angelini, Justice