# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-17-00592-CV
---

**James F. McKinnon, Appellant**

**v.**

**Robert Stone Wallin and William Brandon Wallin, Appellees**

---
### FROM THE COUNTY COURT OF GILLESPIE COUNTY
### NO. 10093, HONORABLE POLLY JACKSON SPENCER, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

James F. McKinnon, acting pro se, appeals from the trial court's final judgment and imposition of equitable lien following a jury trial.[1] McKinnon primarily complains about evidentiary rulings by the trial court and contends that the trial court improperly had him removed from the courtroom, violating his due process rights. For the following reasons, we affirm the trial court's final judgment and imposition of equitable lien.

---

[1] McKinnon's appeal was filed in the Fourth Court of Appeals but transferred to this Court by order of the Texas Supreme Court pursuant to section 73.001 of the Texas Government Code. *See* Tex. Gov't Code § 73.001 (authorizing Texas Supreme Court to transfer cases from one court of appeals to another "at any time that, in the opinion of the supreme court, there is good cause for the transfer"); Misc. Docket No. 17-0113 (Tex. Sept. 8, 2017).

## Background[2]

Cherry S. McKinnon, who was the wife of McKinnon, died in August 2012.[3] Appellees Robert Stone Wallin and William Brandon Wallin were Cherry's children from a prior marriage. After disputes arose among the parties concerning Cherry's estate and the character of certain marital property, appellees filed a petition for declaratory judgment and imposition of equitable lien in February 2013. Among the subjects of the declarations that they sought was property known as Tin Star Ranch, which was purchased by Cherry and McKinnon in September 2006 during their marriage. McKinnon filed a countersuit and petition for declaratory judgment. The parties disputed the character of Tin Star Ranch—the percentage of the property that was community property and the percentage that was Cherry's separate property.

In June 2016, the trial court granted in part and denied in part appellees' no evidence and traditional motions for summary judgment. In its orders, the trial court made declarations, including that: "A separate property contribution by Cherry S. McKinnon in the amount of $2,227,959.36 was made toward the purchase of the real property known as the Tin Star Ranch (not referring to any portion of that certain 9.98 acres commonly referred to as the Tin Star Ranch

---

[2] Because the parties are familiar with the facts of the case and its procedural history, we do not recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4.

[3] We refer to Cherry S. McKinnon by her first name because she shares the same last name with appellant.

Homestead)."[4]    According to factual assertions in McKinnon's original answer, Cherry's separate property contribution was "the proceeds from the sale of decedent's separate ranch, Honey Rock Ranch."

The jury trial occurred on September 19, 2016. The disputed issue of fact at trial was whether Cherry intended to make a gift to McKinnon of any portion of her separate property interest in the property known as Tin Star Ranch. Appellees' witnesses testified about the structure of the purchase of Tin Star Ranch and the sources of funds that Cherry and McKinnon used to purchase the property. In addition to the separate property contribution made by Cherry, Cherry and McKinnon borrowed money to pay a portion of the purchase price. As to her separate property contribution, Cherry utilized a "qualified intermediary" for tax deferral purposes. To claim the tax deferral, which Cherry had done, appellees' witnesses testified that she was required to maintain her separate property interest in Tin Star Ranch.[5]

McKinnon left the courtroom during appellees' case in chief and did not return for the remainder of the trial. At the time that he exited the courtroom, he was cross-examining one of appellees' witnesses, and the trial court had instructed him several times to take a seat because he was refusing to follow the trial court's instructions as to relevant lines of questioning. After he continued to refuse to follow the trial court's instructions and referenced a lawsuit that he had against the trial court "for being unfair and unbiased (sic) in the courtroom," the trial court instructed him to "take a seat in the hallway." In response, McKinnon told the trial court, "I'll just go home then."

---

[4] The Tin Star Ranch Homestead is not relevant to this appeal.

[5] The exhibits included the McKinnons' jointly filed 2006 federal income tax return.

The trial court responded, "You may make that choice." McKinnon then replied, "I will do so. I'll go home. You're gonna do what you want anyhow in the courtroom. Why do you need me?" Shortly after this exchange with the trial court, McKinnon thanked the jury for their time and exited the courtroom.

The trial court's instructions to the jury in the charge included: "[I]n this case, as a matter of law, that $2,227,959.36 of the proceeds used to purchase Tin Star Ranch was the separate property of Cherry S. McKinnon." The jury was asked the following question: "Do you find by clear and convincing evidence that on September 29, 2006, Cherry S. McKinnon intended to make a gift of one-half of her $2,227,959.36 separate property interest in the Tin Star Ranch to James F. McKinnon?" The jury answered "No" to this question and also found amounts for costs and reasonable attorney's fees incurred by appellees. The trial court thereafter rendered judgment in accordance with its summary judgment rulings and the jury's verdict, including making the following declarations in its judgment:

- "Cherry McKinnon's separate property estate contributed $2,227,959.36 (Two Million, Two Hundred Twenty-Seven Thousand, Nine Hundred Fifty-Nine and 36.100 Dollars) toward the purchase of the Tin Star Ranch."

- "No gift was made by Cherry McKinnon to James McKinnon of any part of her separate property interest in the Tin Star Ranch."

- "At the time of her death, the separate property estate of Cherry McKinnon owned a 65.02% interest in the Tin Star Ranch."

This appeal followed.

4

**Analysis**

In his "statement of issues presented," McKinnon complains that the trial court did not allow him "to talk about Honey Rock Ranch" and improperly "ordered [the] bailiff to remove [him] from the courtroom" and argues that his due process rights were violated.[6]

McKinnon, however, generally fails to support his issues with "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." *See* Tex. R. App. P. 38.1(i) (requiring "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Briggs v. Bank of Am., N.A.*, No. 04-16-00087-CV, 2017 Tex. App. LEXIS 1423, at *4–5 (Tex. App.—San Antonio Feb. 22, 2017, no pet.) (mem. op.) ("When an appellant fails to cite applicable authority, fails to provide relevant citations to the record, or fails to provide substantive analysis for an issue presented in the brief, nothing is presented for our review."); *Davis v. American Express Bank*, No. 03-12-00564-CV, 2014 Tex. App. LEXIS 9662, at *7 (Tex. App.—Austin Aug. 29, 2014, no pet.) (mem. op.) (noting that "[a]ppellate issues must be supported by argument and authority, and if they are not so supported, they are waived"); *Lee v. Kaufman*, No. 03-10-00148-CV,

---

[6] We consider the issues and arguments that McKinnon raises in his amended brief that was filed on August 2, 2017. McKinnon initially filed a brief on March 9, 2017, but the Fourth Court of Appeals ordered him to file an amended brief based on the court's determination that his initial brief flagrantly violated Texas Rule of Appellate Procedure 38. *See* Tex. R. App. P. 38 (addressing requisites of briefs), 38.9(a) (authorizing court of appeals to require brief to be amended if court "determines that this rule has been flagrantly violated"). McKinnon then filed an amended brief on March 24, 2017. Thereafter, the Fourth Court of Appeals abated the appeal and remanded the case to the trial court for a hearing to resolve issues related to the accuracy of the reporter's record. After the appeal was reinstated, the Fourth Court of Appeals ordered McKinnon to file or supplement his brief by a certain date and, if he did so, that his amended brief would replace his brief that was filed at the end of March 2017. He thereafter filed his amended brief on August 2, 2017.

2011 Tex. App. LEXIS 6969, at *9–10 (Tex. App.—Austin Aug. 26, 2011, no pet.) (mem. op.) (finding issue waived that was not supported "with arguments, legal authority, or citations to the record").

"[P]ro se appellants are held to the same standard as parties represented by counsel to avoid giving unrepresented parties an advantage over represented parties." *Stewart v. Texas Health & Human Servs. Comm'n*, No. 03-09-00226-CV, 2010 Tex. App. LEXIS 9787, at *5–6 & n.1 (Tex. App.—Austin Dec. 9, 2010, no pet.) (mem. op.) (citing *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978)). Holding McKinnon to this standard, we conclude that he has waived his issues by inadequate briefing. *See* Tex. R. App. P. 38.1(i); *Briggs*, 2017 Tex. App. LEXIS 1423, at *9 (holding that pro se appellant's brief was "procedurally and substantively inadequate" and that appellant had presented nothing for review on appeal). Nonetheless, we will attempt to address his arguments as best we understand them. *See Stewart*, 2010 Tex. App. LEXIS 9787, at *6 n.1 (addressing pro se appellant's "complaints as best we can").

**Evidentiary and Summary Judgment Rulings**

McKinnon complains that the trial court did not allow him to "talk about Honey Rock Ranch." He also complains that the trial court did not allow him "to speak about liberty or the flag" in violation of his freedom of speech, that he should have been allowed to cross-examine appellees' witnesses about Honey Rock Ranch, that he "could have shown that a premarital agreement was not signed by either party, which makes it community property," and that he appealed the trial court's summary judgment orders that addressed Honey Rock Ranch.

6

To support his position that he appealed the summary judgment orders, McKinnon includes as exhibits to his brief copies of documents file-stamped by the Gillespie County Clerk in July 2016 in which he purported to appeal from the trial court's summary judgment rulings.[7] These documents, however, were not properly included in the record on appeal, and we may not consider them. *See* Tex. R. App. P. 34.1 (addressing contents of appellate record), 38.1(g) (requiring appellate briefs to contain statement of facts supported by record references); *Save Our Springs All., Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 892 (Tex. App.—Austin 2010, pet. denied) ("We are limited to the appellate record provided."); *Burke v. Insurance Auto Auctions Corp.*, 169 S.W.3d 771, 775 (Tex. App.—Dallas 2005, pet. denied) (explaining that documents that are cited in brief and attached as appendices may not be considered by appellate courts if they are not formally included in record on appeal).

The appellate record also does not contain the summary judgment motions or evidence so we must presume that the omitted documents supported the trial court's summary judgment rulings. *See Enterprise Leasing Co. v. Barrios*, 156 S.W.3d 547, 549–50 (Tex. 2004) (per

_____

[7] The documents are titled: (i) Motion on Appeal on Traditional Motion for Summary Judgment against attorney Polly Jackson Spencer Conspiring in with Attorney Shelly Fristoe and Brandon and Robert Wallin, and Attorney Chris Wallindorf Attorney for the Estate of the Deceased Cherry S. McKinnon. Depriving Deceased Cherry S. McKinnon Rights to Freedom of Speech in the Constitution and Depriving Liberty Interest in our Flag to Deceased Cherry S. McKinnon in her Last Will and Testament and Life Before Death and After Death in One's Will; and (ii) Motion of Appeal on No-Evidence Motion for Summary Judgment. Against Attorney Polly Jackson Spencer, Attorney Shelly Fristoe, and Attorney Chris Wallindorf Attorney for the Estate of the Deceased Cherry S. McKinnon. For Using Courts to Deprive Deceased Cherry S. McKinnon of her Rights in the First Amendment of the Constitution of the United States of America, for Selling of Interest of Property Known as Tin Star Ranch of James F. McKinnon. And that James F. McKinnon is Still Executor of Estate of Deceased Cherry S. McKinnon, Depriving of Liberty in our Flag.

curiam) (explaining that, "[i]f the pertinent summary judgment evidence considered by the trial court is not included in the appellate record, an appellate court must presume that the omitted evidence supports the trial court's judgment"); *Mallios v. Standard Ins. Co.*, 237 S.W.3d 778, 781–83 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (explaining that it is burden of party challenging grant of summary judgment to include complete summary judgment record considered by trial court in ruling on motion for summary judgment and that "otherwise, the appellate court may apply the presumption that the omitted documents support the trial court's judgment and affirm the grant of summary judgment on that basis").

As to McKinnon's complaint that he was not allowed to cross-examine appellees' witnesses, he has failed to preserve this complaint for our review because he did not make an offer of proof concerning the substance of what the excluded testimony would have been. *See* Tex. R. Evid. 103; *In re M.G.N.*, 491 S.W.3d 386, 399 (Tex. App.—San Antonio 2016, pet. denied) (explaining offers of proof that preserve challenges to trial court's exclusion of evidence); *Akin v. Santa Clara Land Co.*, 34 S.W.3d 334, 339 (Tex. App.—San Antonio 2000, pet. denied) ("The failure to make an offer of proof containing a summary of the excluded witness's intended testimony waives any complaint about the excluded evidence on appeal."). And, finally, as to McKinnon's complaint that the trial court did not allow him to "talk" or "speak," his unsworn statements would not have been evidence, *see Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (per curiam) (observing that statements of attorney who is not sworn as witness generally are not evidence); and he was no longer participating in the trial—having decided to "go home"—when it was time to present his case, *see* Tex. R. Civ. P. 265 (generally setting forth order of proceedings for jury trials);

Tex. R. Evid. 611 (addressing court's role in controlling "mode and order of examining witnesses and presenting evidence").

The trial court's discretion over the conduct of a trial is great, including intervening in the trial to maintain control. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240–41 (Tex. 2001). Based on our review of the record, the trial court acted well within its discretion when interacting with McKinnon to maintain control over the proceeding. *See id.* McKinnon repeatedly did not comply with the rules or follow the trial court's instructions. *See Mansfield State Bank*, 573 S.W.2d at 184 ("The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with the relevant rules of procedural and substantive law." (quoting *Faretta v. California*, 422 U.S. 806, 835 n.46 (1975))).

On these bases, we overrule McKinnon's issues that challenge the exclusion of evidence, the trial court's summary judgment rulings, and his complaint that the trial court did not allow him to "talk" or "speak."[8]

**McKinnon's Absence from a Portion of the Trial**

McKinnon argues that the trial court improperly "ordered the bailiff to remove [him] from the courtroom and continued the court hearing without [him] being represented" in violation of his due process rights. McKinnon, however, has not preserved this complaint for our review.

___

[8] McKinnon also asserts that the trial court's judgment is not supported by "factually sufficient evidence" and contrary to the overwhelming weight of the "excluded evidence" because the trial court would not consider his evidence. He, however, has failed to preserve a complaint as to the factual sufficiency of the evidence. *See* Tex. R. Civ. P. 324 (requiring motion for new trial to preserve complaint that evidence was factually insufficient to support jury finding); *Standley v. Sansome*, 367 S.W.3d 343, 351 (Tex. App.—San Antonio 2012, pet. denied).

9

To preserve complaint for appellate review, a party generally must present a timely request, objection, or motion, state the specific grounds therefor, and obtain a ruling from the trial court. *See* Tex. R. App. P. 33.1. And the preservation requirement generally applies to constitutional challenges. *See Low v. Henry*, 221 S.W.3d 609, 619 (Tex. 2007) (concluding that relevance objection did not preserve due process complaint based on lack of notice); *In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003) (holding that due process argument that appellant was raising with appellate court was not preserved below); *Marin Real Estate Partners v. Vogt*, 373 S.W.3d 57, 92–93 (Tex. App.—San Antonio 2011, no pet.) ("Even constitutional error can be waived if not raised in the trial court."). McKinnon has not identified in the record where he made the trial court aware of his complaint that the trial court was violating his due process rights when McKinnon left the courtroom and did not return during the trial.[9]

Further, even if he had preserved this complaint, we would conclude that it was without merit because the record reflects that he left the courtroom voluntarily. Although McKinnon alleges that the reporter's record was altered to make it appear that he left voluntarily, the Fourth Court of Appeals during the pendency of this appeal abated the appeal and remanded the case to the trial court to hold a hearing on the accuracy of the trial transcript. Following an evidentiary hearing,

---

[9] McKinnon also argues that the trial court violated due process by "saying openly" to the jury that Honey Rock Ranch was the separate property of Cherry. Again, he did not raise this argument with the trial court and, therefore, has not preserved it for our review. But, even if he had, we would reject the argument. The trial court appropriately advised the jury of its summary judgment rulings, including instructing the jury in the jury charge that, as a matter of law, "$2,227,959.36 of the proceeds used to purchase Tin Star Ranch was the separate property of Cherry S. McKinnon." *See* Tex. R. Civ. P. 277 (addressing submission of case to jury), 278 (addressing submission of questions, definitions, and instructions to jury).

the trial court found that the transcript had not been altered and was accurate. The trial court held this hearing in June 2017, and McKinnon did not appear for the hearing. The witnesses at the hearing included the court reporter who transcribed and recorded the trial, and she testified that the transcript was accurate, and the exhibits from that hearing included the audio recording of the trial. Based on the evidence, the trial court made findings of fact in its order, including that: (i) the transcript from the trial was "accurate and unaltered"; (ii) "McKinnon's allegations that the Reporter's Record was altered to make it appear as though he left the courtroom voluntarily when he was actually ejected by the trial judge have no basis in fact"; and (iii) "McKinnon's allegations that words reflecting instructions by the trial judge to the bailiff to remove McKinnon from the courtroom were purposefully omitted from the Reporter's Record have no basis in fact."

Based on our review of the record, we conclude that it does not support McKinnon's contentions that the trial court ordered the bailiff to remove him from the courtroom or that the trial transcript was altered.[10] On this basis, we overrule McKinnon's issues that address his absence from portions of the trial.

---

[10] As support for his position that the transcript was altered, McKinnon cites an affidavit from one of the jurors that he included as an exhibit to his brief. The affidavit was not properly included in the appellate record, and we may not consider it. *See* Tex. R. App. P. 34.1, 38.1(g); *Save Our Springs All., Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 892 (Tex. App.—Austin 2010, pet. denied); *Burke v. Insurance Auto Auctions Corp.*, 169 S.W.3d 771, 775 (Tex. App.—Dallas 2005, pet. denied).

## Conclusion

For these reasons, we affirm the trial court's final judgment and imposition of equitable lien.[11]

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Pemberton and Goodwin

Affirmed

Filed: August 14, 2018

---

[11] To the extent that McKinnon raises new arguments in his reply brief, they are waived, and we do not consider them. *See McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("An issue raised for the first time in a reply brief is ordinarily waived and need not be considered by this Court."); *Hutchison v. Pharris*, 158 S.W.3d 554, 564 (Tex. App.—Fort Worth 2005, no pet.) (same). Further, we deny McKinnon's motions that are pending before this Court, including his motion to this Court to hold a hearing on his request to modify the reporter's record.